Brad WILLIAMS, Appellee/Cross–
Appellant,

v.

FIRST GOVERNMENT MORTGAGE
AND INVESTORS CORPORATION,
Appellant/Cross–Appellee.

Industry Mortgage Company,
Appellant/Cross–
Appellee.

Nos. 97–7195, 97–7211 and 97–7243.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 11, 1998.

Decided March 26, 1999.

Nathan I. Finkelstein and Laurie B. Horvitz argued the cause and filed the briefs for appellants/cross-appellees.

Rachel Mariner argued the cause for Brad Williams as appellee. Nina F. Simon argued the cause for Brad Williams as cross-appellant. With them on the briefs was Jean Constantine–Davis.

Before: WALD, TATEL and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge TATEL.

TATEL, Circuit Judge:

A 61-year-old disabled, retired painter and handyman, appellee Brad Williams has owned his home in Northeast Washington, D.C., for 28 years. Williams retired in 1987 due to physical disability.

In 1994, Williams had a $42,000 mortgage from Central Money Mortgage Company. He paid $587 per month. Because he owed $1,400 in unpaid property taxes, the D.C. government advertised his house for auction in a tax sale. Short on cash, Williams went to several lenders, including seven banks, seeking a $1,400 loan to pay his taxes. Because his income was too low, most would not give him credit.

Appellant First Government Mortgage and Investors Corporation offered to help Williams, though not by loaning him the $1,400 he needed to make the payment. Instead, First Government offered to refinance his entire mortgage through a 30–year loan for $58,300 with a 13.9 percent interest rate and $686 monthly payments. Although the monthly payment was $100 more than he had been paying, and although the term of the loan was longer than he wanted, Williams reluctantly took the loan, believing he had no other way to avert foreclosure. Most of the loan, $42,913, paid off his existing mortgage; $7,596 covered various fees; $1,609 covered his taxes; $1,273 went to pay for a two-year life insurance policy; the remaining $4,909 eventually went toward his monthly payments.

At the time of the loan settlement, Williams was receiving $1,072 a month in disability benefits, $100 of which went to health insurance, plus up to $3,000 a year from part-time work. At most he had roughly $1,200 a month in disposable income, over half of which went to First Government to cover his $686 monthly payments. This left little more than $500 each month to buy necessities for himself and his dependents. With 11 children and 23 grandchildren, Williams testified, his household had at least seven people in it at any given time.

Williams kept up with his loan payments for 12 months, but his financial circumstances steadily worsened. He began to run out of food by the latter part of each month. His electricity, gas, and water were cut off. Eventually he fell behind on his loan payments. In August 1996, Industry Mortgage Company (to whom First Government had assigned the loan) served him with a foreclosure notice demanding $63,831.

Williams filed suit in the United States District Court for the District of Columbia, seeking to enjoin the foreclosure, to rescind the loan, and to recover damages pursuant to statutory and common law causes of action. Among other things, he claimed (1) that First Government violated section 28–3904(r) of the D.C. Consumer Protection Procedures Act ("CPPA") by knowingly taking advantage of his inability to protect his interests in the loan transaction or by knowingly making him a loan he could not repay with any reasonable probability; (2) that First Government violated the common law doctrine of unconscionability articulated in *Williams v. Walker–Thomas Furniture Co.*, 350 F.2d 445 (D.C.Cir.1965); and (3) that First Government violated the federal Truth in Lending Act ("TILA") by failing to disclose the life

insurance premium as a finance charge and by failing to give him timely notice of his right to cancel the loan. First Government moved for summary judgment, arguing that the CPPA does not apply to home mortgage loans. The district court denied the motion. *See Williams v. Central Money Co.*, 974 F.Supp. 22, 27 (D.D.C.1997) (*"Williams I"*).

After a five-day trial, the jury returned an $8,400 verdict in favor of Williams on his CPPA claim. Finding the evidence sufficient to sustain the verdict, the district court denied First Government's motion for judgment notwithstanding the verdict. *See Williams v. First Gov't Mortgage & Investors Corp.*, 974 F.Supp. 17, 22 (D.D.C. 1997). After trebling the jury's award to $25,200, as authorized by section 28–3905(k)(1) of the CPPA, the district court denied Williams's common law unconscionability and TILA claims. *See id.* at 18–22. Williams then filed a motion seeking $199,340 in attorneys' fees. The district court awarded him the entire amount. *See Williams v. Central Money Co.*, No. 96–1993 (D.D.C. Jan.28, 1998); *Williams v. Central Money Co.*, No. 96–1993 (D.D.C. Oct.1, 1997). Both sides appealed.

■ First Government's primary claim is that section 28–3904(r) of the CPPA does not apply to the transaction in this case. It first argues that the district court should have applied Maryland law instead of the D.C. consumer protection statute because First Government is not a D.C. corporation, its offices are located in Maryland, the meetings with Williams took place in Maryland, and the loan payments went to a Maryland address. We review choice-of-law issues de novo. *See Felch v. Air Florida*, 866 F.2d 1521, 1523 (D.C.Cir. 1989).

■ Because Williams's CPPA claim against First Government is a diversity action, the law of the forum state supplies the applicable choice-of-law standard. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477

(1941). Under D.C. law, courts must "evaluate the governmental policies underlying the applicable laws and determine which jurisdiction's policy would be more advanced by the application of its law to the facts of the case under review." *District of Columbia v. Coleman*, 667 A.2d 811, 816 (D.C.1995). "Where each state would have an interest in application of its own law to the facts, ... the law of the jurisdiction with the stronger interest will apply." *Bledsoe v. Crowley*, 849 F.2d 639, 641 (D.C.Cir.1988). "If the interests of the two jurisdictions in the application of their law are equally weighty, the law of the forum will be applied." *Id.* at 641 n. 1 (citing *Kaiser-Georgetown Community Health Plan v. Stutsman*, 491 A.2d 502, 509 & n. 10 (D.C.1985)).

Maryland no doubt has an interest in ensuring that lenders behave fairly, and the loan transaction in this case did have contacts with Maryland. But the District of Columbia likewise has an interest in protecting its citizens from predatory loan practices, and the transaction also had significant contacts with the District. Without deciding which jurisdiction's policy interests are stronger, we have no hesitation concluding that on the facts of this case the District's interests are at least as strong as Maryland's—a conclusion that compels the application of D.C. law. *See id.* As the district court explained, "by issuing a loan to a D.C. resident and taking his D.C. home as collateral," First Government "availed [itself] of, and subjected [itself] to, the consumer protection laws of the District of Columbia." *Williams I*, 974 F.Supp. at 27. "If the CPPA did not apply to cases like this one," said the district court, "loan and mortgage companies could ... evade D.C. consumer protection laws by locating themselves just across the District line from the D.C. citizens they seek as customers." *Id.*

■ Next, First Government offers the novel but meritless argument that its compliance with the federal Truth in Lending Act shields it from CPPA liability. The

two statutes have quite different purposes and impose quite different requirements. TILA mandates the disclosure of certain documents in lending transactions. *See* 15 U.S.C. §§ 1631–1649 (1994). The CPPA provides substantive protections for borrowers against unconscionable loan terms and provisions. *See* D.C.CODE ANN. § 28–3904(r) (1996). Nothing in TILA or its legislative history suggests that Congress intended the Act's disclosure regime to provide the maximum protection to which borrowers are entitled nationwide; states remain free to impose greater protections for borrowers. First Government has identified no way in which the CPPA would defeat TILA's purposes, nor has it suggested how joint applicability of the two statutes would subject it to conflicting obligations. We thus hold that TILA does not preempt the CPPA and that TILA compliance does not immunize lenders like First Government against CPPA liability. *See Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (discussing criteria for finding preemption); *California Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 280–81, 107 S.Ct. 683, 93 L.Ed.2d 613 (1987) (same).

Finally, as in *DeBerry v. First Gov't Mortgage & Investors Corp.*, 170 F.3d 1105 (D.C.Cir.1999), also released today, First Government argues that section 28–3904(r) of the CPPA, which governs "terms or conditions of sales or leases," does not apply to home mortgage or refinancing transactions like the one at issue here. D.C.CODE ANN. § 28–3904(r). In *DeBerry,* we noted that the contrary argument— that section 28–3904(r) does apply to real estate mortgage transactions—"does not lack persuasive force" in light of the text, structure, and legislative history of the CPPA. *DeBerry,* 170 F.3d at 1110. Nevertheless, "because the local courts have not ruled directly on this issue and because the answer will have significant effects on District of Columbia mortgage finance practice," we certified the issue to the D.C. Court of Appeals. *Id.* We therefore decline to decide whether section 28–

3904(r) of the CPPA applies to home mortgage transactions and instead await the D.C. Court of Appeals's response to the certification of this issue in *DeBerry*. In the meantime, we shall append to the certification in *DeBerry* the briefs and record in this case.

Pending resolution of this issue by the D.C. Court of Appeals, we hold in abeyance First Government's further claims that the record evidence was insufficient to support the jury's determination of liability and award of damages under the CPPA, and that the $199,340 attorneys' fee award was either disproportionate to the amount of damages recovered or unreasonable in relation to Williams's success in the litigation. Given the possible implications of the D.C. Court of Appeals's judgment on the certified issue, as well as our desire to avoid deciding this case piecemeal, we also hold in abeyance Williams's appeal from the district court's denial of his common law unconscionability and TILA claims:

*So ordered.*