Lillie May DeBERRY, Appellant,

v.

FIRST GOVERNMENT MORTGAGE
AND INVESTORS CORPORATION,
Appellee.

No. 97–7211.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 11, 1998.
Decided March 26, 1999.

Mark L. Hessel argued the cause for appellant. With him on the briefs was Mark L. Leemon.

Nathan I. Finkelstein argued the cause for appellee. With him on the brief was Laurie B. Horvitz.

Before: WALD, TATEL and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

Lillie May DeBerry appeals the order and judgment of the district court granting summary judgment to First Government Mortgage and Investors Corporation ("First Government"). Ms. DeBerry brought an action alleging that First Government had violated the District of Columbia Consumer Protec-

tion Procedures Act ("CPPA"), D.C.Code § 28–3904(r), by financing and refinancing her home with four mortgage loans containing unconscionable terms or provisions.[1] The district court granted summary judgment to First Government based solely on its finding that D.C.Code § 28–3904(r) did not apply to real estate mortgage finance transactions. Ms. DeBerry contests this finding, arguing that D.C.Code § 28–3904(r) does in fact apply to these transactions. Although neither of the parties requested certification of this issue of statutory interpretation to the District of Columbia Court of Appeals, see D.C.Code § 11–723, because of its importance to local commerce and because there is no decision by the highest court in the District of Columbia precisely on point, we have decided to certify it to that court. Ms. DeBerry also challenges the district court's dismissal—as barred by the statute of limitations—of two of her claims based on loans made in 1991 and 1992. We agree that such dismissal was improper and reinstate these two claims contingent on a positive response by the District of Columbia Court of Appeals to the question certified here. Ms. DeBerry also challenges the grant of summary judgment to First Government with respect to her claim for common law infliction of emotional distress. Again, we agree with Ms. DeBerry that this grant was improper and accordingly reinstate the claim. Lastly, Ms. DeBerry argues that the district court improperly denied as moot her motion for attorneys' fees ordered by a magistrate judge to compensate Ms. DeBerry for the necessity of filing a motion to compel discovery. We agree that the district court erred in failing to rule on the question of attorneys' fees before disposing of the case and accordingly remand for further consideration.

## I. BACKGROUND

Ms. DeBerry inherited her home in 1981. In April of 1991, she borrowed $10,000 from First Government, secured by a deed of trust on her home. In August of 1992, First Government refinanced the debt on Ms. DeBerry's home, loaning her $16,500. On April 13, 1995, Ms. DeBerry again refinanced her home by borrowing $21,000 from First Government. On April 27, 1995, Ms. DeBerry borrowed $27,500 from another lender, Bankers First Mortgage Company, Inc. ("Bankers First").[2] On May 31, 1995, Ms. DeBerry entered into still another loan transaction with Bankers First for $39,000. In December of 1995, First Government made a final loan to Ms. DeBerry for $45,000.

On April 15, 1996, Ms. DeBerry filed this action against First Government.[3] Ms. DeBerry alleged that in financing the four loans, First Government had violated the Consumer Protection Procedures Act, D.C.Code §§ 28–3901 to –3909. Specifically, Ms. DeBerry alleged a violation of D.C.Code § 28–3904(r)(1) and § 28–3904(r)(5). D.C.Code § 28–3904 is entitled "Unlawful trade practices." D.C.Code § 28–3904(r)(1) and § 28–3904(r)(5) provide that it is a violation of the chapter to

> (r) make or enforce unconscionable terms or provisions of sales or leases; in applying this subsection, consideration shall be given to the following, and other factors:
>
> > (1) knowledge by the person at the time credit sales are consummated that there was no reasonable probability of payment in full of the obligation by the consumer;
>
> > .  .  .  .  .
>
> > (5) that the person has knowingly taken advantage of the inability of the consumer reasonably to protect his interests by reasons of age, physical or mental infirmities, ignorance, illiteracy, or inability to understand the language of the agreement. . . .

Ms. DeBerry claims that for each of these loans, she was charged a large percentage of

---

1. The district court had jurisdiction over this diversity action based on 28 U.S.C. § 1332. Ms. DeBerry is a citizen of the District of Columbia; First Government is a Virginia corporation with its principal place of business in Maryland; and the amount in controversy exceeds $75,000.

2. Bankers First was also a defendant below, but was dismissed from the suit pursuant to a settlement agreement.

3. Ms. DeBerry also sued six other defendants. Five of these defendants were dismissed from the suit pursuant to settlement agreements; one was dismissed on substantive grounds.

the amount borrowed in points and other fees. For example, with respect to the 1991 loan, Ms. DeBerry claims that she was charged $2,540 to borrow $10,000. Ms. DeBerry alleges that the loans made by First Government were unconscionable in that they constituted a pattern and practice of reverse redlining which she defines as "a predatory lending practice of making high cost loans to unsophisticated homeowners who have little money but do have substantial equity in their homes." Appellant's Br. at 3.

On July 1, 1996, First Government filed a motion to dismiss. After hearing arguments on the motion, the district court dismissed Ms. DeBerry's claims relating to the loans made by First Government in 1991 and 1992 because the loans were made more than three years before she filed her complaint and, hence, were barred by the relevant statute of limitations. The court declined to dismiss the rest of the case.

On July 9, 1997, the court assigned discovery matters to a magistrate judge. On July 31, 1997, Ms. DeBerry filed a motion to compel discovery and to grant sanctions. After a hearing on September 5, 1997, the magistrate judge issued an order directing First Government to respond to certain discovery requests and to pay attorneys' fees and expenses associated with Ms. DeBerry's motion to compel. On September 23, 1997, First Government filed objections to the magistrate's order. Ms. DeBerry opposed the objections and subsequently filed a motion to set attorneys' fees.

On October 29, 1997, the district court held a hearing on a summary judgment motion filed by First Government. The court thereafter issued an order granting summary judgment to First Government with respect to Ms. DeBerry's claim under the CPPA and dismissing all other pending motions as moot. The court also granted summary judgment to First Government with respect to Ms. DeBerry's claim for common law infliction of emotional distress, finding that the claim was dependent on the CPPA claims.

The district court's decision to grant summary judgment with respect to Ms. DeBerry's CPPA claims was based solely on its finding that the CPPA did not apply to real estate mortgage finance transactions, which in turn relied heavily on a decision by the District of Columbia Court of Appeals, *Owens v. Curtis*, 432 A.2d 737 (D.C.1981), where the court held that the CPPA did not apply to the sale of real estate. The district court found that *Owens* controlled this case and reasoned that if the CPPA did not apply to the sale of real estate, *a fortiori* it did not apply to real estate mortgage finance transactions. In granting summary judgment, the district court made clear that the sole and exclusive basis for its ruling was that the CPPA did not apply and that otherwise there were a number of disputed facts deserving of a trial.[4]

## II. Discussion

### A. *Applicability of D.C.Code § 28–3904(r)*

The issue of whether D.C.Code § 28–3904(r) applies to mortgage finance transactions has not been the subject of a ruling by the District of Columbia Court of Appeals, to whom we would ordinarily look for guidance on its construction. *See Schleier v. Kaiser Found. Health Plan of the Mid–Atlantic States, Inc.,* 876 F.2d 174, 180 (D.C.Cir.1989) (per curiam). That court has, however, applied without comment another subsection of D.C.Code § 28–3904, (e), to a mortgage finance transaction and in the same case rejected a claim under D.C.Code § 28–3904(r) on the sole ground that the facts in the case did not support the claim (or, in other words, not because D.C.Code § 28–3904(r) did not apply). *See Osbourne v. Capital City Mortgage Corp.,* 667 A.2d 1321, 1330 & 1331 n. 13 (D.C.1995). However, First Government argues that while real estate mortgage finance transactions may be covered under D.C.Code § 28–3904(e), which provides that it is an unlawful trade practice to "misrepresent as to a material fact which has a tendency to mislead," they are not covered under D.C.Code § 28–3904(r), which provides that

4. Because the district court specifically found that the case would be deserving of trial if the CPPA did in fact apply to mortgage finance transactions, we do not address First Government's efforts on appeal to argue the merits of Ms. DeBerry's claims.

it is an unlawful trade practice to "make or enforce unconscionable terms or provisions of sales or leases...." First Government makes this argument on the basis of the "sales or leases" language which appears in D.C.Code § 28–3904(r). Specifically, First Government argues that one cannot sell or lease a mortgage finance and, accordingly, that such transactions are not contemplated under D.C.Code § 28–3904(r).

To assess the quality of this argument, we look to the text and structure of the CPPA as a whole. The CPPA is, as the District of Columbia Court of Appeals has noted, "to say the least, an ambitious piece of legislation which seeks to prohibit a long list of 'unlawful trade practices.'" *Howard v. Riggs National Bank,* 432 A.2d 701, 708 (D.C.1981). Two sections of the CPPA, in particular, are relevant to our inquiry. The first is entitled "Definitions and purposes." D.C.Code § 28–3901. This section indicates that it applies to the entire CPPA, *see* D.C.Code § 28–3901(a), and provides, *inter alia,* the following. A "trade practice" is defined as "any act which does or would create, alter, repair, furnish, make available, provide information about, or, directly or indirectly, solicit or offer for or effectuate a sale, lease or transfer, of consumer goods or services." D.C.Code § 28–3901(a)(6). "Goods and services" is defined as "any and all parts of the economic output of society, at any stage or related or necessary point in the economic process, and includes consumer credit, franchises, business opportunities, real estate transactions, and consumer services of all types." D.C.Code § 28–3901(a)(7).

The second section relevant to our inquiry is entitled "Unlawful trade practices." D.C.Code § 28–3904. Under this section are listed a number of occurrences that constitute unlawful trade practices. For example, it is an unlawful trade practice to represent that goods are original or new if in fact they are used, *see* D.C.Code § 28–3904(c); to falsely state the reasons for offering or supplying goods or services at sale or discount prices, *see* D.C.Code § 28–3904(*l*); to harass or threaten a consumer with any act other than legal process, *see* D.C.Code § 28–3904(m); to misrepresent the authority of a salesman, representative or agent to negotiate the final terms of a transaction, *see*

D.C.Code § 28–3904(v); and so forth. As mentioned above, two other unlawful trade practices listed under D.C.Code § 28–3904 are to misrepresent as to a material fact which has a tendency to mislead, *see* D.C.Code § 28–3904(e), and to make or enforce unconscionable terms or provisions of sales or leases, *see* D.C.Code§ 28–3904(r). First Government would have us draw a distinction between the unlawful trade practice listed in D.C.Code § 28–3904(e), which the District of Columbia Court of Appeals has applied to a real estate mortgage transaction, and the unlawful trade practice listed in D.C.Code§ 28–3904(r), as to which it has not yet ruled regarding real estate mortgage transactions, solely because of the "sales or leases" language that appears in D.C.Code § 28–3904(r).

Of course, the reason given by the district court for concluding that D.C.Code § 28–3904(r) did not apply to real estate mortgage finance transactions was that the local courts had construed D.C.Code § 28–3904 as not applying to sale of real estate and that *a fortiori* it did not apply to mortgage finance transactions. However, the district court was mistaken as to the state of local law with respect to real estate. In *Owens v. Curtis,* 432 A.2d 737, 739 (D.C.1981), the court held that the CPPA did not apply to the sale of real estate. In response to this decision, the Council of the District of Columbia ("D.C. Council") amended the definitional section of the CPPA explicitly to include "real estate transactions" as an example of a "good or service." *See* Report of the Council of the District of Columbia, Committee on Consumer and Regulatory Affairs, on Bill 8–111 and Bill 8–271, at 3–4 (1990) ("1990 Report") (noting that the Committee was expanding the definition of "'goods and services' to cover the holding in the matter of *Owen[s]*"); *see also Schiff v. American Ass'n of Retired Persons,* 697 A.2d 1193, 1197 & n. 10 (1997) (noting that the 1990 Amendment was "adopted with the express purpose of reversing the holding" of *Owens*).

The district court below was under the misapprehension that *Owens* was still good law; its denial of Ms. DeBerry's claim on that basis is accordingly unpersuasive. De-

spite the foregoing, however, First Government argues that while D.C.Code § 28–3904(r) may now—post-*Owens*—apply to the *sale* of real estate, it still does not apply to a real estate mortgage finance transaction because one cannot "sell" or "lease" a mortgage refinance and D.C.Code § 28–3904(r) specifically mentions "sales or leases."

Ms. DeBerry in turn argues that a careful reading of the statute reveals serious impediments to the success of First Government's argument. D.C.Code § 28–3904(r) provides that it is an unlawful trade practice to "make or enforce unconscionable terms or provisions of sales or leases." To determine whether real estate mortgages are covered under this provision, a reader asks, "sale or lease of what?" D.C.Code § 28–3904(r) does not itself provide the answer to this question, but the reader may go back to the definitional section—which applies to all of the subsections in D.C.Code § 28–3904—to seek guidance. Under the definition of a "trade practice," it provides that a trade practice is any act relating to the "sale, lease or transfer, of *consumer goods or services*." D.C.Code § 28–3901(a)(6) (emphasis added); *see also id.* § 28–3901(a)(2) (defining "consumer" to include a "person who does or would *purchase, lease* (from), or receive *consumer goods or services*" (emphasis added)); *id.* § 28–3901(a)(3) (defining a "merchant" as a "person who does or would *sell, lease* (to), or transfer, either directly or indirectly, *consumer goods or services,* or a person who does or would supply the goods or services which are or would be the subject matter of a trade practice" (emphasis added)). The reader may ask, "well, what does goods and services include?" "Goods and services" is

defined in the very next subsection: "goods and services" means "any and all parts of the economic output of society, at any stage or related or necessary point in the economic process, and includes *consumer credit,* franchises, business opportunities, *real estate transactions,* and *consumer services of all types.*" D.C.Code § 28–3901(a)(7) (emphases added).[5] Considering that a mortgage finance constitutes a sale of consumer credit and consumer services as well as qualifying as a real estate transaction, the reader, turning back to D.C.Code § 28–3904(r), may conclude that it is an unlawful trade practice to make or enforce unconscionable terms or provisions of sales or leases of goods and services, including consumer credit, consumer services, and real estate transactions; or, in other words, that D.C.Code § 28–3904(r) applies to real estate mortgage transactions.[6]

However, First Government would limit "sale," as it appears in D.C.Code § 28–3904(r), to its most narrow and traditional of senses, that is, X pays Y a certain amount to purchase a certain good. First Government thus argues that because it did not sell the property which was the basis of the mortgage refinance, it did not in fact "sell" anything to Ms. DeBerry at all. Ms. DeBerry replies that such is an oversimplification, as consumer transactions are often more complex than X paying Y for a certain good. Take as an example the common situation where X buys a good from Y but ultimately pays Z who has financed the deal and has security in the chattel in case of default. Has Z "sold" anything to X in this scenario? Ms. DeBerry argues that the CPPA assumes that Z has sold a good or service to X by

---

5. This interpretive approach is consistent with that employed by the District of Columbia Court of Appeals. In *Owens v. Curtis,* 432 A.2d 737 (D.C.1981), the court interpreted the applicable scope of D.C.Code §§ 28–3904(e) and (f). Although neither section mentioned the words "trade practice" or "goods and services"—just as D.C.Code § 28–3904(r) does not use those words—the Court nonetheless determined the applicable scope of those provisions with reference to the definitions of those terms found in D.C.Code§ 28–3901. In particular, it read the definitions contained in D.C.Code §§ 28–3901(a)(6) and (7) in tandem. *See id.* at 738–39 & n. 2. (As previously noted, *Owens* was overruled by statute for other reasons).

6. Apart from the text and structure of the CPPA, the legislative history provides only general background for interpretation of D.C.Code § 28–3904(r). There is nothing in the general history to suggest that D.C.Code § 28–3904(r) was intended to operate any differently than any other unfair trade practice under D.C.Code § 28–3904, and the specific history of (r) indicates only that its purpose was to ensure that *"all* merchants do not … (r) make contracts so unfair as to be 'unconscionable.'" Report of the Council of the District of Columbia, Committee on Public Services and Consumer Affairs, on Bill 1–253, at 14, 17–18 (1976) ("1976 Report") (emphasis added).

extending consumer credit and hence that the transaction between Z and X would be covered by D.C.Code § 28–3904(r).[7] *See Jackson v. Culinary School of Washington,* 788 F.Supp. 1233, 1253 (D.D.C.1992) (applying D.C.Code § 28–3904(r) to extension of consumer credit, holding that a "merchant includes one who sells consumer credit as well as those entities which take an assignment of the credit account and continue the extension of credit to the consumer"); *rev'd on other grounds* 27 F.3d 573 (D.C.Cir.1994); *Lawson v. Nationwide Mortgage Corp.,* 628 F.Supp. 804, 807 (D.D.C.1986) (holding that mortgage refinancing transaction was covered by the CPPA because the CPPA "specifically encompasses such 'consumer credit' transactions").[8]

■ Ms. DeBerry's interpretation of D.C.Code § 28–3904(r), in light of the text and structure of the CPPA as a whole, does not lack persuasive force, but because the local courts have not ruled directly on this issue and because the answer will have significant effects on District of Columbia mortgage finance practice, we have decided to save the issue for the District of Columbia Court of Appeals. According, we certify the following question pursuant to D.C.Code § 11–723:

Does D.C.Code § 28–3904(r) apply to real estate mortgage finance transactions? Appended to this certification are the briefs and portions of the trial court record provided by the parties to this appeal. In addition, we shall provide the District of Columbia Court of Appeals with any other portion of the trial court record it might desire to have in order to answer the certified question.

### B. *Statute of Limitations*

■ Ms. DeBerry argues that the district court erred in dismissing her claims relating to loans made in 1991 and 1992. Ms. DeBerry filed her complaint in 1996 and, hence, these loans, if considered separately, are on their faces barred by the relevant statute of limitations. *See* D.C.Code § 12–301(8) (limitation is three years where not otherwise specifically prescribed). However, Ms. DeBerry argues that the district court ought not to have dismissed these claims based solely on the pleadings, that is, before she had an opportunity to conduct discovery. While it might be difficult for Ms. DeBerry to demonstrate that the 1991 and 1992 loans are not to be viewed as separate incidents vulnerable to the statute of limitations, she should have been afforded an opportunity to do so.[9] Accordingly, we find that the district court erred in dismissing the claims before

7. The legislative history of the 1990 Amendment bears out this thesis.
> The definition of "goods and services" is amended to include all residential real estate transactions. This amendment was expanded to address problems that have arisen in recent years. Given their complexity, it is hard to discern when a real estate transaction may be considered a sale. It is the Committee's belief that the inclusion of the term "transaction" will give the court sufficient range to discern whether a transaction is a sale or a lease arrangement. Furthermore, as the statute presently prohibits application to landlord-tenant issues, it is felt that the use of the term "transaction" has been given specific parameters for court interpretation.
> *1990 Report,* at 3.

8. *See also* 1976 Report, at 13–14 (defining "goods and services" as "the subject matter of any trade practice, *including any action normally considered only incidental to the supply of goods and services to consumers*") (emphasis added).

9. For example, Ms. DeBerry may be able to demonstrate that she only realized First Government's alleged scheme to strip equity from her

home after a number of the loans had been made and hence that the 1991 and 1992 loans were not barred pursuant to the "discovery rule." *See Farris v. Compton,* 652 A.2d 49 (D.C.1994). However, a second argument against dismissal based on a "continuing tort" theory appears to be unavailable. Ms. DeBerry relied on this court's decision in *Page v. United States,* 729 F.2d 818, 821 (D.C.Cir.1984) ("It is well-settled that '[w]hen a tort involves continuing injury, the cause of action accrues ... at the time the tortious conduct ceases' ") (footnote omitted), to argue that First Government's actions constituted a continuing tort and hence that the 1991 and 1992 loans were not untimely. However, the District of Columbia Court of Appeals has specifically rejected the reasoning in *Page, see National R.R. Passenger Corp. v. Krouse,* 627 A.2d 489, 497–98 (D.C.1993), and has held that "the policy disfavoring stale claims makes application of the 'continuous tort' doctrine inappropriate." *Wallace v. Skadden, Arps, Slate, Meagher & Flom,* 715 A.2d 873, 883 (D.C.1998). Accordingly, the "continuing tort" argument appears to be unavailable under District of Columbia law.

appropriate discovery could be conducted. The reinstatement of these claims will of course be held in abeyance until the question of whether D.C.Code § 28–3904(r) applies to real estate mortgage transactions has been resolved by the District of Columbia Court of Appeals.

### C. Claim for Infliction of Emotional Distress

 Ms. DeBerry challenges the grant of summary judgment for First Government with respect to her claim for common law infliction of emotional distress. The only reason the district court gave for its dismissal was that the claim was dependent on the CPPA claims and that the dismissal of the latter therefore required the dismissal of the former. Dismissal on this ground was incorrect. *See Saunders v. Nemati*, 580 A.2d 660, 661 (D.C.1990). Accordingly, we reinstate Ms. DeBerry's claim for common law infliction of emotional distress and remand it for reconsideration by the district court.

### D. Attorneys' Fees

Finally, Ms. DeBerry argues that a court order to pay attorneys' fees with respect to discovery issues is independent of the merits of the underlying case and, hence, that the district court erred in failing to rule on the magistrate's order of fees before disposing of the case. We agree and, accordingly, remand the issue of attorneys' fees with instructions that the district court rule on the issue irrespective of the outcome of the case on the merits.

### III. Conclusion

For the foregoing reasons, we reverse the district court's dismissal of Ms. DeBerry's claim for common law infliction of emotional distress and remand for further consideration; we reinstate Ms. DeBerry's claims relating to loans made in 1991 and 1992, contingent on the District of Columbia Court of Appeals' affirmative response to the question certified; and we reverse the district court's dismissal of the order of attorneys' fees and remand with instructions to rule on the order irrespective of the outcome of the case on the merits. Finally, we certify the question of whether D.C.Code § 28–3904(r) applies to real estate mortgage finance trans-

actions to the District of Columbia Court of Appeals for resolution.

*So ordered.*