2003-NMCA-062

68 P.3d 909

**Jemil D. AZAR, Ronald J. Solimon, and Re/Max Advantage, Ltd., a New Mexico limited partnership, for themselves and all others similarly situated, Plaintiffs–Appellees,**

v.

**The PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant–Appellant.**

**No. 22,133.**

Court of Appeals of New Mexico.

Jan. 17, 2003.

Certiorari Denied, No. 27,910, March 4, 2003.

Paul Bardacke, John M. Eaves, Peters S. Kierst, Kerry Kiernan, Karen S. Mendenhall, Eaves, Bardacke, Baugh, Kierst & Kiernan, P.A., Dennis M. McCary, Floyd D. Wilson, Alan R. Wilson, Barbara Pryor, McCary, Wilson & Pryor Alan K. Konrad, Law Offices of Alan Konrad, Albuquerque, NM, for Appellees.

Edward Ricco, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, NM, Edward M. Rosenfeld, Bryan Cave LLP, Santa Monica, CA, for Appellant.

Victoria E. Fimea, American Council of Life Insurers, Washington, DC, George Ruhlen, Mayer, Brown & Platt, Santa Fe, NM, Evan M. Tager, Craig W. Canetti, David M. Gossett, Mayer, Brown & Platt Washington, DC, for Amicus Curiae American Council of Life Insurers.

## OPINION

FRY, Judge.

{1} This case is one of approximately twenty putative class actions in New Mexico in which life insurance policyholders allege that insurers have failed to adequately disclose to policyholders the additional cost of paying their premiums in installments—also called "modal" or "fractional" premiums—instead of once annually. In particular, policyholders claim that insurers have a duty to disclose, both before the policy is issued and in the policy itself, the following information: (1) the dollar amount difference between paying premiums annually and in monthly, quarterly, or semi-annual installments, and (2) the effective "annual percentage rate" of interest (APR) allegedly charged to policyholders electing to pay their premiums more frequently than annually.

{2} In this case, Defendant Prudential Insurance Company of America (Prudential) applied for interlocutory appeal from the trial court's order (1) denying Prudential's motion for summary judgment on the issue of whether it owed a duty of disclosure to Plaintiffs; (2) denying Prudential's motion to refer underlying issues of fact to the "primary jurisdiction" of the Insurance Division of the New Mexico Public Regulation Commission (Insurance Division); and (3) granting partial summary judgment in favor of Plaintiffs on the issue of liability as to their claims under the New Mexico Unfair Practices Act,

NMSA 1978, §§ 57–12–1 to –22 (1967, as amended through 1999) (UPA), the New Mexico Unfair Insurance Practices Act, §§ 59A–16–1 to –30 (1984, as amended through 1999, prior to 2001 amendment) (UIPA), and New Mexico common law. We granted the application and allowed the American Council of Life Insurers (ACLI) to file an amicus curiae brief.

{3} The interlocutory appeal raises five main issues: (1) whether the federal Truth in Lending Act, 15 U.S.C. §§ 1601–1693 (2002) (TILA), preempts Plaintiffs' state law claims; (2) whether the trial court erred in concluding, as a matter of law, that Prudential owed a duty to disclose both dollar amount and APR information to Plaintiffs under both New Mexico statutory and common law; (3) whether Prudential was denied due process of law when the trial court sua sponte granted summary judgment in favor of Plaintiffs on essentially all their New Mexico claims even though only one Plaintiff had moved for summary judgment on only his UPA claim; (4) whether the trial court erred by weighing and deciding disputed issues of fact or in granting summary judgment prematurely without allowing Prudential a reasonable opportunity to develop additional material facts; and (5) whether the Insurance Division has primary jurisdiction to consider any of the underlying factual issues in this case.

{4} For the reasons that follow, we affirm the trial court's denial of Prudential's motion for summary judgment, reverse the grant of partial summary judgment in favor of Plaintiffs, and remand for further proceedings consistent with this opinion.

## I. *BACKGROUND*

### A. Facts

{5} Plaintiffs Jemil D. Azar, Ronald J. Solimon, and Re/Max Advantage, Ltd. each purchased life insurance policies from Prudential. Prudential gave Plaintiffs the option of paying their premiums monthly, quarterly, semi-annually, or annually. Two of the Plaintiffs, Azar and Solimon, elected to pay their premiums on a monthly basis. Azar paid a monthly premium of $63.50—a total of $762 per year. Solimon paid a monthly premium of $39.50—a total of $474 per year. The third Plaintiff, Re/Max, paid a premium of $1,036 twice a year—a total of $2,072 per year.

{6} Prudential, however, charged an additional fee if policyholders elected to pay their premiums more frequently than annually. Prudential asserts that this additional fee reflects several factors, including (1) the increased administrative costs of processing multiple payments; (2) the higher lapse rate for policyholders opting to pay on a periodic basis; and (3) the loss of investment income that Prudential otherwise would have earned with an annual premium paid in advance. Consequently, Azar, whose annual premium would have been $675, paid an additional $87 per year as a result of paying his premium monthly. Solimon, whose annual premium would have been $419, paid an additional $55 per year as a result of paying his premium monthly. Re/Max, whose annual premium would have been $2,000, paid an additional $72 per year as a result of paying its premium semi-annually. According to Dr. Brian McDonald, Plaintiffs' economic expert, Azar, Solimon, and Re/Max paid APRs of approximately 27.4%, 20.8%, and 14.4%, respectively, as a result of paying their premiums more frequently than annually.

{7} In advancing the theory that policyholders are entitled to the disclosure of modal premium charges in terms of an APR or annual interest rate both before and after policies are issued, Plaintiffs rely chiefly on the views of Joseph M. Belth, professor emeritus of insurance in the Kelley School of Business at Indiana University. Since the late 1970's, Professor Belth has advocated the disclosure of fractional premium charges in terms of both dollars and an APR, similar to that required of creditors under TILA, on the premise that this is information a policyholder needs in order to decide which premium payment frequency option is best for that particular policyholder. Professor Belth contends that, if consumers have APR information as a point of reference, then they can make better informed choices about how to pay for their annual premiums—whether from a savings account, investment, loan, or credit card with a lower APR—and can more

easily compare the different modal premium charges of insurance companies. Despite his vigorous campaign and efforts to require such disclosures in life insurance products, it appears the professor's theories and proposals have been rejected or dismissed by most state insurance regulators in the country and by Congress.

{8} Prudential, on the other hand, claims that it adequately disclosed its modal premium charges in the policies and the related documents furnished to Plaintiffs. In particular, it claims that the modal premium charges were authorized by a clause in each policy providing as follows:

> **CHANGE OF FREQUENCY** You may ask us in writing to have premiums fall due either more or less often. If we agree, we will make the change and tell you what the new premiums are and when they are due. *The more often premiums are due, the larger the total amount that will have to be paid for a contract year.*

(Emphasis added.) Each Plaintiff also received a policy summary or "Statement of Contract Cost and Benefit Information" setting forth the *annual* premium amount for the policy. The summaries, in turn, referred Plaintiffs to a separate schedule of premiums in the policies stating the *installment* premium amounts. Two of the Plaintiffs, Solimon and Re/Max, apparently received additional documents or illustrations comparing their annual premiums to their modal premiums.

{9} It appears that none of the applications for insurance completed by Plaintiffs disclosed the cost of the different premium payment modes available to them or any corresponding APR figures. However, the policies issued to Plaintiffs provided a ten-day right to cancel the policy:

> Not later than ten days after you get this contract, you may return it to us. All you have to do is take it or mail it to one of our offices or to the agent who sold it to you. The contract will be canceled from the start and we will give back your money promptly.

The form of policy issued to Plaintiffs was approved by the New Mexico Insurance Division and thus was determined to be in compliance with the requirements of the New Mexico Insurance Code.

**B. Proceedings**

{10} On August 13, 1999, Plaintiffs, acting on behalf of a purported nationwide class of policyholders, sued Prudential in the Thirteenth Judicial District Court, claiming that Prudential failed to disclose material facts about the additional cost of paying premiums on an installment basis. Plaintiffs filed an amended complaint on October 14, 1999.

{11} The amended complaint alleges that Prudential "knowingly failed to state or disclose" to Plaintiffs "material facts" regarding the premium payment options available to them under the policies, including "the dollar amount and the effective annual rate of additional premium, interest, finance charge or time price differential" they were required to pay when electing to pay their premiums on an other than annual basis. The amended complaint alleges that Prudential's failure to disclose material facts constituted: (1) a breach of Prudential's fiduciary duties; (2) a breach of the implied covenant of good faith and fair dealing; (3) fraudulent concealment; (4) unjust enrichment; (5) unfair or deceptive practices in violation of the UPA; (6) unfair or deceptive practices in violation of the New Jersey Unfair Trade Practices Act; (7) misrepresentation and false advertising of policies in violation of the UIPA; (8) misrepresentation and false advertising of policies in violation of the New Jersey Insurance Trade Practices Act; (9) violation of the New Mexico Retail Installment Sales Act; and (10) violation of the New Jersey Retail Installment Sales Act. The amended complaint alleges that Prudential's actions and omissions were willful, intentional, and in bad faith. Consequently, Plaintiffs seek compensatory, treble, and punitive damages, restitution, prejudgment interest, and attorney's fees and costs. They also request declaratory and injunctive relief. Finally, they seek certification as a class pursuant to Rule 1–023 NMRA 2002.

{12} After filing an answer to the amended complaint, Prudential filed three pre-trial motions: (1) a motion to bifurcate discovery and stay discovery on the merits; (2) a motion to refer Plaintiffs' claims to the Insur-

ance Division under the doctrine of primary jurisdiction; and (3) a motion for summary judgment on the issue of whether Prudential owed a duty of disclosure to Plaintiffs. Only the primary jurisdiction motion and the motion for summary judgment are relevant to this appeal.

{13} In its primary jurisdiction motion, Prudential argued that Plaintiffs' claims raise issues that should first be heard and determined by the Insurance Division, as the agency with the expertise and duty to regulate and supervise the insurance industry in New Mexico. Plaintiffs filed a response opposing the motion.

{14} In its motion for summary judgment, Prudential argued that it had no duty to disclose to Plaintiffs the dollar amount and APR of any of its modal premium charges. Specifically, Prudential argued that Plaintiffs improperly sought to impose upon Prudential a duty to disclose "TILA Facts," which it defined as those facts, including "APR," "interest," and "finance charge," that must be disclosed to consumers of "credit" under TILA. Prudential argued that, as a matter of law, insurers are not required to disclose "APR" and "finance charge" information when the policyholder pays for coverage on an installment basis because the policyholder is not contractually obligated to continue making payments on the policy. Prudential also argued that it had no duty to disclose "TILA Facts" where the policies issued to Plaintiffs complied with the Insurance Code and applicable regulations and were approved by the New Mexico Superintendent of Insurance. It further argued that any duty to disclose "TILA Facts" is negated by the legislature's repeal of NMSA 1978, Section 56–8–11.2 (1981). Finally, it argued that it had no duty to disclose under each of the statutory and common law theories alleged in the amended complaint.

{15} In their response opposing Prudential's motion for summary judgment, Plaintiffs argued that, under New Mexico common law and statutory law, Prudential had a duty to make full disclosure of all material facts regarding its modal premium practices. Relying primarily on the affidavits of their two economic experts, Professor Belth and Dr.

McDonald, Plaintiffs argued that Prudential failed to disclose material facts that an average policyholder would want to know when deciding how to pay premiums.

{16} After Prudential moved for summary judgment, Plaintiff Azar filed two cross-motions for partial summary judgment. His first summary judgment motion argued the applicability of New Jersey law to this dispute. His second motion was based solely on his claim under New Mexico's UPA. In that motion, Azar sought a finding that Prudential's failure to disclose dollar amount and APR information in connection with its modal premium charges was "an unfair and deceptive [trade] practice" under the UPA. He further sought a ruling that the regulatory defense set forth in NMSA 1978, Section 57–12–7 (1999), does not apply in this case.

{17} Prudential filed responses opposing both of Azar's motions for partial summary judgment. It also requested conditional relief under Rule 1–056(F) NMRA 2002, seeking leave to depose Plaintiffs and to perform additional discovery if the trial court were inclined to rule in Plaintiff Azar's favor on the issue of the materiality of the information allegedly undisclosed by Prudential.

{18} On March 9, 2001, following two hearings on the parties' pre-trial motions, the trial court granted partial summary judgment against Prudential as to liability on all of Plaintiffs' claims, except their claims under the New Mexico Retail Installment Sales Act and New Jersey law, which were dismissed with prejudice. The trial court first determined that New Mexico law controls this dispute. The trial court then found that, based on the undisputed record, "there was an intentional failure by [Prudential] to disclose a material fact in each Plaintiff's policy of insurance, namely, an intentional failure by [Prudential] to disclose the dollar amount of, and the annual percentage rate ... applicable to, the additional premium, interest, finance charge or time-price differential which Plaintiffs were charged as a result of paying premiums more frequently than annually." The trial court also found that the undisclosed information was "material as to the method of financing the premium payment that a consumer might choose."

{19} The trial court specifically found that Prudential: (1) violated the UPA and that the regulatory exemption of Section 57–12–1 did not apply; (2) violated NMSA 1978, Sections 59A–16–4 and –5 (1984), of the UIPA; and (3) "violated its common law duty to make full disclosure of material facts to Plaintiffs." The trial court reserved the issues of damages, injunctive relief, interest, and attorney's fees and costs for future determination. The trial court further denied Prudential's (1) motion for summary judgment, (2) motion to refer underlying fact issues to the Insurance Division, and (3) motion to bifurcate and stay discovery.

{20} The trial court granted partial summary judgment to Plaintiffs on essentially all their New Mexico claims even though only one Plaintiff, Azar, moved for summary judgment on a single claim under the UPA. The trial court concluded that it had authority to grant the relief because there was no genuine issue of material fact in the record before it, and Prudential had moved for summary judgment on the entire amended complaint, thus putting into issue all of Plaintiffs' claims. This interlocutory appeal followed.

## II. DISCUSSION

### A. TILA Preemption

#### 1. Preservation

{21} On appeal, Prudential first argues that the trial court's summary judgment decision must be reversed because TILA preempts any state laws that require disclosure of modal premium charges as an "annual percentage rate" of "interest." Plaintiffs argue that Prudential waived its preemption argument because it failed to adequately preserve the issue for review.

{22} "To preserve an issue for review on appeal, it must appear that appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court." *Woolwine v. Furr's, Inc.*, 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct.App.1987); Rule 12–216(A) NMRA 2002. This Court, however, may, in its discretion, review issues not preserved when they affect the "general public interest" or involve "fundamental er-

ror or fundamental rights of a party." Rule 12–216(B).

{23} Prudential argues that the trial court was alerted to the issue of preemption when Prudential moved for summary judgment on the ground that it had no legal duty to disclose "TILA Facts," and Plaintiffs responded with the statement that their state law claims were "not preempted by the Truth in Lending Act." In oral argument before this Court, however, defense counsel conceded that Prudential neither pleaded preemption in its answer nor raised it at any point in the proceedings below.

{24} "[I]t is well settled that an affirmative defense not pleaded or otherwise properly raised is waived." *Xorbox v. Naturita Supply Co.*, 101 N.M. 337, 339, 681 P.2d 1114, 1116 (1984); Rule 1–008(C) NMRA 2002. Federal preemption is an affirmative defense of avoidance and must be pleaded or it is waived. *Gonzales v. Surgidev Corp.*, 120 N.M. 133, 140, 899 P.2d 576, 583 (1995). In this case, Prudential did not affirmatively assert the defense of federal preemption in either its answer or summary judgment motion. Instead, its argument below was that TILA's disclosure requirements do not apply to the insurance transactions in this case because there was no extension of credit, and the policyholder was not contractually obligated to continue making payments. We believe this argument to be much different from, and even inconsistent with, the argument that TILA preempts Plaintiffs' state law claims. *See Am. Bank of Commerce v. U.S. Fid. & Guar. Co.*, 85 N.M. 478, 478, 513 P.2d 1260, 1260 (1973) ("A party cannot change [its] theory on appeal."). Therefore, we conclude that Prudential did not adequately preserve its preemption argument below.

{25} Moreover, Plaintiffs' passing reference to preemption in their response to Prudential's motion for summary judgment was not enough to preserve the issue for review. The rules of preservation clearly require that "[t]he party claiming error must have raised the issue below clearly." *Diversey Corp. v. Chem–Source Corp.*, 1998–NMCA–112, ¶ 12, 125 N.M. 748, 965 P.2d 332. An appellant cannot rely on the argu-

ment of the opposing party to establish preservation. *See Woolwine,* 106 N.M. at 496, 745 P.2d at 721; *cf. State v. James,* 85 N.M. 230, 233, 511 P.2d 556, 559 (Ct.App.1973).

{26} Furthermore, Prudential's reliance on *Harbison v. Johnston,* 2001–NMCA–051, ¶ 8, 130 N.M. 595, 28 P.3d 1136, is misplaced. In that domestic relations case, we determined that the mother's argument was preserved for review because the specific statutory provision on which she based her appellate argument was not only raised below, but was specifically relied on by the trial court in granting the father's motion to dismiss. *Id.* By contrast, in this case, the trial court's order is silent on the issue of preemption, and there is no indication in the record that the court ever considered the issue in deciding summary judgment.

{27} Prudential nonetheless argues that this Court should review its preemption claim on the ground that it falls within the "general public interest" exception to the preservation requirement. *See* Rule 12–216(B)(1). We agree.

{28} In the past, we have invoked the general public interest exception to the preservation rule where review of the appellate issue is likely to settle a question of law affecting the public at large or a great number of cases and litigants in the near future. *See, e.g., Pineda v. Grande Drilling Corp.,* 111 N.M. 536, 540, 807 P.2d 234, 238 (Ct.App. 1991); *State v. Doe,* 90 N.M. 572, 574, 566 P.2d 121, 123 (Ct.App.1977); *cf. O'Neel v. USAA Ins. Co.,* 2002–NMCA–028, ¶ 22, 131 N.M. 630, 41 P.3d 356 (declining to review unpreserved challenge to the trial court's award of pre-arbitration attorney fees, concluding that the issue did "not have the far-reaching impact necessary to invoke the general public interest exception to our general preservation requirements"); *Gracia v. Bittner,* 120 N.M. 191, 196, 900 P.2d 351, 356 (Ct.App.1995) (concluding that jury instruction issues raised for first time on appeal do not involve general public interest because they "are not likely to affect a large number of cases or litigants").

{29} In this case, we believe the state at large has an interest in the resolution of the preemption issue because it potentially impacts the insurance industry and the life insurance policyholders of this state. Moreover, as Prudential points out, at least "[t]wenty other 'APR' cases are now pending in this [s]tate in which plaintiffs seek to recover billions of dollars on behalf of millions of putative class members on a nationwide basis." Under these circumstances, we will apply the general public interest exception to reach the preemption issue, which is of great import to the consumers and the insurance industry in this state, and possibly across the nation, and will affect a large number of cases and litigants in the near future. *See O'Neel,* 2002–NMCA–028, ¶ 21, 131 N.M. 630, 41 P.3d 356; *Gracia,* 120 N.M. at 196, 900 P.2d at 356. Because we apply the general public interest exception, we need not address whether the fundamental error doctrine applies.

## 2. Merits of Preemption Claim

{30} Federal law may preempt state law under the Supremacy Clause, U.S. Const. art. VI, cl. 2, by "express provision, by implication, or by a conflict between federal and state law." *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 654, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995); *Hennessy v. Duryea,* 1998–NMCA–036, ¶ 6, 124 N.M. 754, 955 P.2d 683. "The purpose of the preemption doctrine is to allow Congress to promulgate a uniform federal policy without states frustrating it through either legislation or judicial interpretation." *Largo v. Atchison, Topeka & Santa Fe Ry. Co.,* 2002–NMCA–021, ¶ 6, 131 N.M. 621, 41 P.3d 347. Courts, however, apply a strong presumption against preemption, particularly in areas of law that are traditionally left to state regulation. *Hennessy,* 1998–NMCA–036, ¶ 8, 124 N.M. 754, 955 P.2d 683; *Montoya v. Mentor Corp.,* 1996–NMCA–067, ¶ 7, 122 N.M. 2, 919 P.2d 410.

{31} "Whether federal law preempts state law is generally a question of congressional intent." *Srader v. Verant,* 1998–NMSC–025, ¶ 7, 125 N.M. 521, 964 P.2d 82. " 'When Congress has considered the issue of preemption and has included in the

legislation a provision expressly addressing the issue,' we need only identify the domain expressly preempted by the federal statute and may infer that matters beyond that domain are not preempted." *Hennessy*, 1998–NMCA–036, ¶ 6, 124 N.M. 754, 955 P.2d 683 (quoting *Montoya*, 1996–NMCA–067, ¶ 8, 122 N.M. 2, 919 P.2d 410).

{32} Prudential argues that the statutory provisions of TILA and its implementing regulation, Regulation Z, 12 C.F.R. § 226 (2002), expressly preempt Plaintiffs' state law claims. First, relying on the Federal Reserve Board's official staff interpretation of Regulation Z, Prudential contends that the Federal Reserve Board has explicitly determined that modal or fractional premium charges do not involve a "finance charge," "interest," or an "annual percentage rate" of "interest," as those terms are defined in TILA, "unless the consumer is contractually obligated to continue making payments." *See* Official Staff Interpretations, 12 C.F.R. § 226.2(a)(14)(1) (Supp. I 2002). Prudential points out that, in interpreting TILA and Regulation Z, courts must give special deference to the official opinions of the Federal Reserve Board staff unless shown to be irrational. *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565–66, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980).

{33} Next, Prudential points out that TILA and Regulation Z both contain explicit language regarding TILA's preemptive effect. TILA provides that it does "not annul, alter, or affect the laws of any State relating to the disclosure of information in connection with credit transactions, except to the extent that those laws are inconsistent ... and then only to the extent of the inconsistency." 15 U.S.C. § 1610(a)(1). The effect of this provision is that state disclosure laws that are inconsistent with TILA are preempted to the extent of any inconsistency; however, other state disclosure requirements are not affected. *Id.*

{34} Regulation Z also delineates when state law is "inconsistent" with TILA. Effect on State laws, 12 C.F.R. § 226.28(a) (2002). One such "inconsistency" arises if the state law "requires the use of the same term to represent a different amount or a different meaning than the Federal law, or if it requires the use of a term different from that required in the Federal law to describe the same item." 12 C.F.R. § 226.28(a)(1). Prudential argues that the trial court, in granting summary judgment to Plaintiffs, used the terms, "finance charge," "interest," and "annual percentage rate" to represent meanings different than the federal law. *See id.* Therefore, Prudential argues, Plaintiffs' claims are preempted by TILA. We disagree.

{35} As noted above, this Court starts with the presumption that Congress did not intend to preempt state law. *Montoya*, 1996–NMCA–067, ¶ 7, 122 N.M. 2, 919 P.2d 410. To conclude that TILA preempts Plaintiffs' state law claims, we must find an actual conflict between TILA and state law. A conflict, however, does not exist unless it is impossible to comply with both state and federal requirements, or if state law obstructs the congressional objectives underlying the federal law. *See Hennessy*, 1998–NMCA–036, ¶ 6, 124 N.M. 754, 955 P.2d 683. Thus, in order to conclude that TILA preempts conflicting state law, it must first be determined that the federal law applies to the transactions at hand.

{36} TILA, however, by its express terms, applies only to consumer credit transactions. *See* 15 U.S.C. § 1601. "The purpose of TIL[A] is to provide consumers with meaningful disclosures of *credit* terms and conditions, and encourage the informed use of *credit.*" *Gallegos v. Stokes*, 593 F.2d 372, 375 (10th Cir.1979) (emphasis added), *superseded by statute on other grounds as stated in In re Brown*, 106 B.R. 852, 856 (E.D.Pa. 1989); *see also Milhollin*, 444 U.S. at 559, 100 S.Ct. 790. TILA defines "credit" as "the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment." 15 U.S.C. § 1602(e). "Unless there exists an underlying debt and an obligation to make full and complete payment, a 'credit' situation does not arise." *Crawford v. Farmers Group, Inc.*, 160 Cal. App.3d 1164, 207 Cal.Rptr. 155, 159 (1984).

{37} In this case, Plaintiffs "agree they are not 'contractually obligated to continue making payments' and that no consumer credit

transaction or debt is involved." As Prudential recognizes, the Federal Reserve Board has specifically excluded from the definition of "credit" "[i]nsurance premium plans that involve payment in installments" *"unless the consumer is contractually obligated to continue making payments."* 12 C.F.R. § 226.2(a)(14)(1) (Supp.I) (emphasis added); 15 U.S.C. § 1603(5) (providing that TILA does not apply to transactions for which the Federal Reserve Board determines that coverage is not necessary to carry out the purposes of TILA).

{38} Courts in other jurisdictions have uniformly held that, where the policyholder is not contractually obligated to continue making payments on an installment insurance premium plan, there is no credit involved, and TILA is therefore inapplicable. *See, e.g., Kuhfeldt v. Liberty Mut. Ins. Co.,* 833 F.Supp. 632, 636 (E.D.Mich.1993); *Gerlach v. Allstate Ins. Co.,* 338 F.Supp. 642, 647 (S.D.Fla.1972); *Crawford,* 207 Cal.Rptr. at 159; *cf. Cochran v. Paco, Inc.,* 606 F.2d 460, 465–67 (5th Cir.1979) (concluding that a premium financing transaction, where insured is contractually obligated to make payments to insurer, is subject to TILA). Thus, because TILA applies only to consumer credit transactions and does not apply to insurance transactions not involving a creditor-debtor relationship, we find no conflict between TILA and any state law requiring disclosure in this case.

{39} Moreover, it does not appear that the imposition of similar state disclosure requirements in the insurance field would frustrate the goals of TILA. *See Hennessy,* 1998–NMCA–036, ¶ 6, 124 N.M. 754, 955 P.2d 683. Plaintiffs argue that TILA, having as its purpose meaningful disclosure, could not have been intended to restrict remedies under state law. We agree. The Federal Reserve Board's determination that TILA's requirements do not apply to installment insurance premium plans like the ones here, *see* 12 C.F.R. § 226.2(a)(14)(1) (Supp.I), does not preclude states from imposing their own disclosure requirements upon such plans under state law. *See* 12 C.F.R. § 226.28(a)(3) (Supp. I 2002) ("Generally, State law requirements that call for the disclosure of items of information not covered by the Federal law, or that require more detailed disclosures, do not contradict the Federal requirements."); *see also Black v. Fin. Freedom Senior Funding Corp.,* 92 Cal.App.4th 917, 112 Cal. Rptr.2d 445, 460 (2001) (observing that "an inconsistency or contradiction with federal law does not exist merely because the state requires disclosures in *addition* to those required by and under TILA"); *Williams v. First Gov't Mortgage & Investors Corp.,* 176 F.3d 497, 500 (D.C.Cir.1999) (holding that compliance with TILA does not immunize lenders from liability under state law because there is nothing in TILA to suggest "that Congress intended the Act's disclosure regime to provide the maximum protection to which borrowers are entitled nationwide; states remain free to impose greater protections for borrowers"); *Chanoff v. U.S. Surgical Corp.,* 857 F.Supp. 1011, 1015 (D.Conn. 1994) (explaining that, in deciding a preemption question, the fact that state common law prohibits conduct considered legal under federal law is not controlling because states are free to impose more restrictive standards than federal law, and preemption is compelled only when states require behavior prohibited by federal law), *aff'd* 31 F.3d 66 (2nd Cir.1994); *Heastie v. Cmty. Bank of Greater Peoria,* 690 F.Supp. 716, 721 (N.D.Ill.1988) (concluding that consumer fraud claims were not preempted by TILA because they relate to "a range of conduct larger than that covered by the disclosure provisions in the TILA").

{40} Furthermore, according to the express provisions of TILA, it preempts only inconsistent state disclosure laws concerning credit transactions. 15 U.S.C. § 1610(a)(1); *see also* 12 C.F.R. § 226.28(a)(1) (providing that "[s]tate law is inconsistent if it requires a *creditor* to make disclosures or take actions that contradict the requirements of the Federal law" (emphasis added)). We find no bar to the use of the terms, "finance charge," "interest," or "annual percentage rate," outside the realm of consumer credit transactions or in instances where federal disclosure requirements do not apply. *See Hennessy,* 1998–NMCA–036, ¶ 6, 124 N.M. 754, 955 P.2d 683. Therefore, we conclude there is no ex-

press, implied, or conflict preemption in this case.

{41} Finally, Plaintiffs argue that application of TILA to this case is precluded by the McCarran–Ferguson Act, 15 U.S.C. §§ 1011–15 (2000). However, because we determine that TILA is inapplicable for the reasons discussed above, we need not address the effect of the McCarran–Ferguson Act. *See Gerlach,* 338 F.Supp. at 649 (noting that the court need not discuss McCarran Act in view of its finding that case did not involve a consumer credit transaction and was not subject to TILA). We nonetheless recognize a strong presumption against preemption, particularly in those areas of the law, such as insurance, that are traditionally subject to state regulation. *See* § 59A–16–2 (indicating that New Mexico has exercised right to regulate trade practices in the insurance business in accordance with McCarran–Ferguson Act); *Montoya,* 1996–NMCA–067, ¶ 7, 122 N.M. 2, 919 P.2d 410; *Hennessy,* 1998–NMCA–036, ¶ 8, 124 N.M. 754, 955 P.2d 683. Therefore, we reject Prudential's preemption claim.

## B. Review of Summary Judgment

{42} "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Self v. United Parcel Serv., Inc.,* 1998–NMSC–046, ¶ 6, 126 N.M. 396, 970 P.2d 582; Rule 1–056(C). In this appeal, we are asked to determine whether Plaintiffs were entitled to judgment as a matter of law on the issue of liability as to their claims under the UPA, the UIPA, and New Mexico common law. In so doing, we must address the threshold question of whether the trial court properly determined as a matter of law that Prudential owed a duty, under both New Mexico statutory and common law, to disclose dollar amount and APR information to Plaintiffs. These are legal questions that we review de novo. *Self,* 1998–NMSC–046, ¶ 6, 126 N.M. 396, 970 P.2d 582.

### 1. Duty of Disclosure
#### (a) Standard of Review

{43} New Mexico case law recognizes that a party can only be held liable for the failure to disclose material facts when there is a duty to disclose. *R.A. Peck, Inc. v. Liberty Fed. Sav. Bank,* 108 N.M. 84, 88, 766 P.2d 928, 932 (Ct.App.1988). Generally, the existence of a duty is "a question of law for the trial court to decide." *Id.* However, when the facts on which the alleged duty rests are in dispute, the existence of a duty becomes a mixed question of law and fact. *Id.* at 89, 766 P.2d at 933. Thus, disputed issues of fact underlying the duty question must be submitted to the fact-finder for resolution. *Id.; see also* Restatement (Second) of Torts § 551 cmt. m (1977). The existence of a duty, however, remains a question of law for the trial court to determine and is answered by reference to legal precedent, statutes, and other principles comprising the law. *Ruiz v. Garcia,* 115 N.M. 269, 272, 850 P.2d 972, 975 (1993); *see also Leyba v. Whitley,* 120 N.M. 768, 771, 907 P.2d 172, 175 (1995) (noting that duty question is also answered by policy considerations).

{44} In this case, the trial court, finding no genuine issues of material fact in the record, concluded that Prudential was under both a common law and statutory duty to disclose to Plaintiffs modal premium charges in terms of both dollars and an APR. The trial court determined that these were material facts which Prudential intentionally omitted in each Plaintiff's insurance policy. Thus, we address first the issue of common law duty to disclose and, next, the issue of statutory duty to disclose under both the UPA and the UIPA. In so doing, we also consider whether there were any genuine issues of material fact underlying the duty question that would prevent summary judgment.

#### (b) Common Law Duty to Disclose

{45} Both below and on appeal, Plaintiffs have maintained that Prudential owed a duty to disclose material facts to them before and after the formation of the insurance contracts. It is unclear from the trial court's decision whether the court concluded that Prudential had a duty to disclose before, as well as after, the formation of the insurance contracts. The court concluded that Prudential breached "its common law duty to make

full disclosure of material facts to Plaintiffs." However, it found only "an intentional failure to disclose a material fact *in the policy of insurance*" (emphasis added), without specifically addressing whether any improper omissions were also made before the formation of the contracts. We assume, for purposes of this appeal, that the trial court, when it granted partial summary judgment against Prudential, adopted all of Plaintiffs' arguments concerning the existence of a duty both before and after the issuance of the policies.

{46} As we understand Plaintiffs' claims, they contend that Prudential owed and breached a common law duty to disclose material facts based on three distinct theories: (1) the implied covenant of good faith and fair dealing, (2) fiduciary duty, and (3) misrepresentation based on omission or concealment. Below, we address the duty issue in light of each of these theories and determine whether the trial court properly denied Prudential's motion for summary judgment and properly concluded, as a matter of law, that Prudential owed and breached such a duty to disclose to Plaintiffs.

### (i) Implied Covenant of Good Faith and Fair Dealing

{47} Prudential argues that the implied covenant of good faith and fair dealing cannot give rise to a duty to disclose because the change of frequency clause in each policy expressly permitted Prudential to charge a higher amount to policyholders who elected to pay their premiums on an installment basis. As we indicated earlier, each policy provided in part: "The more often premiums are due, the larger the total amount that will have to be paid for a contract year."

{48} Prudential argues that the trial court improperly applied the implied covenant of good faith and fair dealing to override an express provision in the policies, thus ignoring the rule applied in *Melnick v. State Farm Mut. Auto. Ins. Co.*, 106 N.M. 726, 731, 749 P.2d 1105, 1110 (1988). In *Melnick*, our Supreme Court refused to recognize a cause of action for breach of an implied covenant of good faith and fair dealing in an at-will employment relationship, determining that it

was inappropriate "to apply an implied covenant of good faith and fair dealing to override express provisions addressed by the terms of an integrated, written contract." *Id.* at 731, 749 P.2d at 1110; *see also Kropinak v. ARA Health Servs., Inc.*, 2001–NMCA–081, ¶ 11, 131 N.M. 128, 33 P.3d 679 (same). Prudential is correct that the rule in *Melnick* is not limited to employment contracts, but extends to other types of contracts. *See Cont'l Potash, Inc. v. Freeport–McMoran, Inc.*, 115 N.M. 690, 704, 858 P.2d 66, 80 (1993) ("The general rule is that an implied covenant cannot co-exist with express covenants that specifically cover the same subject matter."); *Melnick*, 106 N.M. at 731, 749 P.2d at 1110; *Cafeteria Operators v. Coronado–Santa Fe Assocs.*, 1998–NMCA–005, ¶¶ –12–14, 124 N.M. 440, 952 P.2d 435 (refusing to apply implied covenant of good faith and fair dealing to set aside express provisions in lease agreement).

{49} We are unaware of any reported New Mexico case that applies the *Melnick* principle to the express provisions of an insurance contract. However, our review of case law from other jurisdictions indicates that courts have not hesitated to apply the same rule of law to insurance contracts. *See, e.g., Welfl v. Northland Ins. Co.*, 192 F.3d 1169, 1172–73 (8th Cir.1999) (determining that because insurer was acting according to express terms of insurance contract, there was no violation of implied covenant of good faith and fair dealing, which cannot give rise to new obligations not otherwise contained in express terms); *Health Plans, Inc. v. N.Y. Life Ins. Co.*, 898 F.Supp. 941, 947 (D.Mass. 1995) (discussing that obligation not to raise premiums may not be imposed on insurer where it would be inconsistent with express terms of contract between parties); *Old Republic Ins. Co. v. FSR Brokerage, Inc.*, 80 Cal.App.4th 666, 95 Cal.Rptr.2d 583, 596 (2000) (stating that scope of implied covenant is tied to express terms of policy and when policy benefits were never due to insured, courts have held that insured may not assert bad faith claim); *New Plumbing Contractors, Inc. v. Nationwide Mut. Ins. Co.*, 7 Cal.App.4th 1088, 9 Cal.Rptr.2d 469, 473 (1992) (stating that "neither the duty nor the

covenant of good faith and fair dealing extend beyond the terms of the insurance contract in force between the parties"); *see also Dairyland Ins. Co. v. Herman*, 1998–NMSC–005, ¶ 12, 124 N.M. 624, 954 P.2d 56 (noting that we construe insurance contracts by applying the same principles governing the interpretation of all contracts). Thus, we conclude that the rule in *Melnick* applies equally to insurance cases and that the implied covenant of good faith and fair dealing cannot be used in this case to challenge Prudential's modal premium charges where the policies expressly authorize such charges.

{50} Prudential also makes the related argument that the duty to disclose cannot be based on the implied covenant of good faith and fair dealing because it requires only "that neither party do anything that will injure the rights of the other to *receive the benefit of their agreement.*" *Bourgeous v. Horizon Healthcare Corp.*, 117 N.M. 434, 438, 872 P.2d 852, 856 (1994) (emphasis added); *Dairyland Ins. Co.*, 1998–NMSC–005, ¶ 12, 124 N.M. 624, 954 P.2d 56. We agree that Prudential did not deprive Plaintiffs of a benefit of their agreements because Plaintiffs agreed, when accepting the policies, that "[t]he more often premiums are due, the larger the total amount that will have to be paid for a contract year." *See Read v. W. Farm Bureau Mut. Ins. Co.*, 90 N.M. 369, 374, 563 P.2d 1162, 1167 (Ct.App.1977) (observing that policyholder is bound to examine policy as would be reasonable for him to do under the circumstances and will be held to that which would be alerted).

{51} The implied covenant is aimed at making effective the agreement's promises. Thus, it is breached only when a party seeks to prevent the contract's performance or to withhold its benefits from the other party. Here, there is no evidence that Prudential impaired Plaintiffs' right to a benefit promised by the policy; there is, for example, no allegation that it unreasonably refused to allow Plaintiffs to change their mode or frequency of payment under the policies or refused to pay out a benefit.

{52} In this respect, we also find *Allsup's Convenience Stores, Inc. v. N. River Ins. Co.*, 1999–NMSC–006, 127 N.M. 1, 976 P.2d 1,

upon which Plaintiffs heavily rely, to be distinguishable. Although the *Allsup's* Court recognized a duty, based on the implied covenant of good faith and fair dealing, to disclose material information to the insured, that case involved a retrospective premium plan under which the parties expressly agreed that the amount of the premium was to be determined at the end of the policy year based on the actual amount of claims paid. *Allsup's*, 1999–NMSC–006, ¶ 3, 127 N.M. 1, 976 P.2d 1. Thus, because a benefit of the agreement was a premium amount tied directly to competent claims-handling, the Court held that the insurer had a duty under the implied covenant of good faith to disclose any mishandling of claims to the insured due to its effect on the insured's premiums. *Id.* at ¶¶ 33–36. No such agreement or policy benefit can be said to exist in this case.

{53} We further determine that Plaintiffs may not rely on the implied covenant of good faith and fair dealing to impose a duty of disclosure on Prudential before the issuance of the policies. Because the implied covenant of good faith and fair dealing depends upon the existence of an underlying contractual relationship, Plaintiffs may not recover under the theory for omissions occurring before the existence of the policy. *See Messina v. Nationwide Mut. Ins. Co.*, 998 F.2d 2, 5 (D.C.Cir.1993); *Baldwin v. Laurel Ford Lincoln–Mercury, Inc.*, 32 F.Supp.2d 894, 899 (S.D.Miss.1998); *Frith v. Guardian Life Ins. Co. of Am.*, 9 F.Supp.2d 734, 741 (S.D.Tex.1998); *Atchison Casting Corp. v. Dofasco, Inc.*, 889 F.Supp. 1445, 1464 n. 13 (D.Kan.1995); *Seretti v. Superior Nat'l Ins. Co.*, 71 Cal.App.4th 920, 84 Cal.Rptr.2d 315, 321 (1999); *Empire Distribs., Inc. v. Hub Motors Co.*, 240 Ga.App. 568, 524 S.E.2d 264, 267 (1999). Therefore, for all the reasons discussed above, we conclude that the implied covenant of good faith and fair dealing does not give rise to a duty to disclose in this case.

### (ii) Fiduciary Duty

{54} Prudential also argues that it had no fiduciary duty to disclose additional financial information to Plaintiffs con-

cerning its modal premium charges. A fiduciary relationship exists when special confidence has been placed in one party who in equity and good conscience is bound to act in good faith and with due regard to the interests of the other party. *Allsup's,* 1999–NMSC–006, ¶ 37, 127 N.M. 1, 976 P.2d 1. In the insurance context, New Mexico courts have recognized a fiduciary duty "because of the fiduciary obligations inhering in insurance relationships and because of concerns arising from the bargaining position typically occupied by the insured and insurer." *Romero v. Mervyn's,* 109 N.M. 249, 255 n. 3, 784 P.2d 992, 998 n. 3 (1989); *Allsup's,* 1999–NMSC–006, ¶ 37, 127 N.M. 1, 976 P.2d 1. An insurance relationship alone, however, is not enough to give rise to a fiduciary relationship. *Chavez v. Chenoweth,* 89 N.M. 423, 430, 553 P.2d 703, 710 (Ct.App.1976). Instead, an insurer assumes a fiduciary obligation toward an insured only in matters pertaining to the *performance* of obligations in the insurance contract. *See Romero,* 109 N.M. at 255 n. 3, 784 P.2d at 998 n. 3; *Chavez,* 89 N.M. at 430, 553 P.2d at 710 (recognizing three situations in which a fiduciary relationship was held to exist in the insurance context: (1) where the insurer, by the terms of the policy, had the power to decide whether to accept or reject offers of compromise; (2) where the insurer acted on behalf of the insured in settlement or litigation of claims; and (3) where the insurer gave advice to insured not to hire counsel and to instead communicate with insurer). Thus, the fiduciary duty of an insurer is based on its exclusive control and obligations in matters pertaining to the performance of the insurance contract.

{55} In this case, we find no evidence that Prudential owed any fiduciary duty to Plaintiffs in the performance of its obligations under the policies. This is especially true where the policies and the accompanying summaries and schedules expressly set forth the amounts of both the annual and fractional premiums, and informed Plaintiffs that they would pay a "larger" "total amount" if premiums were paid more frequently than annually. Once again, we note that this case is different from *Allsup's,* where the insurer, by undertaking to set the premium amount retrospectively, owed a duty to act in the best interest of the insured with respect to the handling of claims that would ultimately affect the amount of the premium charged. *Allsup's,* 1999–NMSC–006, ¶ 3, 127 N.M. 1, 976 P.2d 1. No such obligation or exclusive control on the part of the insurer can be said to exist in this case.

{56} Moreover, we decline to acknowledge the existence of the insurer's fiduciary duty before the issuance of the policy. At the application stage, the relationship between insurer and insured is similar to that of buyer and seller, and the transaction is little more than an arms-length negotiation involving the purchase of insurance. Ordinarily, a buyer-seller relationship is not fiduciary in nature, even though the seller typically has superior bargaining power and knowledge. *See Comm. on Children's Television, Inc. v. Gen. Foods Corp.,* 35 Cal.3d 197, 197 Cal.Rptr. 783, 673 P.2d 660, 676 (1983). "An essential feature and consequence of a fiduciary relationship is that the fiduciary becomes bound to act in the interests of [its] beneficiary and not [it]self. Obviously, this dynamic does not inhere in the ordinary buyer-seller relationship." *California Serv. Station & Auto. Repair Ass'n v. Am. Home Assurance Co.,* 62 Cal.App.4th 1166, 73 Cal.Rptr.2d 182, 187 (1998) ("There is no duty of ordinary care to disclose pricing information during arm's-length contract negotiations."); *In re The Prudential Ins. Co. of Am. Sales Practices Litig.,* 975 F.Supp. 584, 616 (D.N.J.1997); *see also Greenberg v. Life Ins. Co. of Va.,* 177 F.3d 507, 521–22 (6th Cir.1999); *Harlach v. Metro. Prop. & Liab. Ins. Co.,* 221 Conn. 185, 602 A.2d 1007, 1009 (1992); *LaFavor v. Am. Nat'l Ins. Co.,* 279 Minn. 5, 155 N.W.2d 286, 290 (1967); *Am. Driver Serv., Inc. v. Truck Ins. Exch.,* 10 Neb.App. 318, 631 N.W.2d 140, 148–49 (2001); *cf. Ponce v. Butts,* 104 N.M. 280, 287, 720 P.2d 315, 322 (Ct.App.1986) (discussing *Chavez* and suggesting that " 'arms-length' dealings" between insurer and insured do not give rise to fiduciary relationship). Thus, we determine that Prudential did not have a fiduciary duty to disclose information relating to modal premium charges before or

after the formation of the insurance contracts.

### (iii) *Modisette* and Fraud and Misrepresentation Law

{57} Relying on *Modisette v. Foundation Reserve Insurance Co.*, 77 N.M. 661, 427 P.2d 21 (1967), and the cases following it, Plaintiffs contend that New Mexico law has long recognized that both the insurer and the insured have a duty not to misrepresent or withhold information material to an insurance contract. In *Modisette,* our Supreme Court, relying on general notions of honesty and fair dealing, recognized the right of the insurer to rescind a policy where the insured misrepresented material facts in an application for automobile insurance. *Id.* at 667, 427 P.2d at 26. Although *Modisette* did not involve misrepresentations or omissions by the insurer, it did acknowledge that the duty to deal fairly and honestly "rests equally upon the insurer and the insured." *Id.* at 666, 427 P.2d at 25. We agree with Plaintiffs that, under *Modisette,* both the insurer and the insured have the obligation to provide material and accurate information to the other before the sale of the insurance policy. *Id.; see also Rael v. Am. Estate Life Ins. Co.,* 79 N.M. 379, 381, 444 P.2d 290, 292 (1968); *Prudential Ins. Co. v. Anaya,* 78 N.M. 101, 104–05, 428 P.2d 640, 643–44 (1967); *accord Stipcich v. Metro. Life Ins. Co.,* 277 U.S. 311, 318, 48 S.Ct. 512, 72 L.Ed. 895 (1928); *cf. Hendren v. Allstate Ins. Co.,* 100 N.M. 506, 510, 672 P.2d 1137, 1141 (Ct. App.1983) (recognizing, based on *Modisette,* that the insurer must also "deal in good faith and fairly as to the terms of the policy and not overreach the insured, despite its adversary interest").

{58} Although we recognize that, under *Modisette,* Prudential may have had a common law duty to disclose material facts before the issuance of the policies, we note that the principles of honesty and fair dealing discussed in *Modisette,* 77 N.M. at 667, 427 P.2d at 25–26, are related to but distinct from the implied covenant of good faith and fair dealing addressed earlier in the opinion. The implied covenant of good faith and fair dealing is a more limited concept in that it requires the existence of an underlying contract and may not be used to override the express provisions of an integrated, written contract. *See Melnick,* 106 N.M. at 730–31, 749 P.2d at 1109–10. By contrast, the obligation to deal fairly and honestly, as discussed in *Modisette,* is a more general duty that embraces the dealings and negotiations between the parties before the formation of the insurance contract. *Modisette,* 77 N.M. at 667, 427 P.2d at 25–26. We further note that with respect to breach of the disclosure duty under *Modisette* "it makes no difference whether the party acted fraudulently, negligently, or innocently." *Id.* at 667, 427 P.2d at 25; *see also Rael,* 79 N.M. at 381, 444 P.2d at 292 (same). By contrast, the implied covenant of good faith and fair dealing protects against only bad faith or wrongful and intentional conduct that injures the other party's rights under the contract, and breach of the implied covenant may be the basis for an award of punitive damages. *See Paiz v. State Farm Fire & Cas. Co.,* 118 N.M. 203, 212–13, 880 P.2d 300, 309–10 (1994).

{59} Plaintiffs also rely on fraud and misrepresentation law to support the recognition of a common law duty to disclose in this case. Although Prudential does not directly address Plaintiffs' contentions based on fraud and misrepresentation in its briefs, we do so on the basis that the amended complaint appears to allege sufficient facts to state a claim against Prudential for fraud or misrepresentation based on omission or concealment. *See Petty v. Bank of N.M. Holding Co.,* 109 N.M. 524, 526–27, 787 P.2d 443, 445–46 (1990) ("Under our rules of 'notice pleading,' it is sufficient that defendants be given only a fair idea of the nature of the claim asserted against them sufficient to apprise them of the general basis of the claim; specific evidentiary detail is not required at this stage of the pleadings.").

{60} New Mexico case law clearly recognizes that a claim for fraud "may be predicated on concealment where there is a duty to disclose." *Peck,* 108 N.M. at 88, 766 P.2d at 932; *Krupiak v. Payton,* 90 N.M. 252, 253, 561 P.2d 1345, 1346 (1977) (recognizing in a fraud case that duty to disclose may arise if there is knowledge that the

other party is acting under a mistaken belief or if one has superior knowledge not within the reach of the other party or which could not have been discovered by the exercise of reasonable diligence); *Wirth v. Commercial Res., Inc.,* 96 N.M. 340, 345, 630 P.2d 292, 297 (Ct.App.1981) (recognizing in a fraud case that when one is under a duty to speak, but remains silent and fails to disclose a material fact, he may be liable). Thus, "a person may be held liable for damages caused by a failure to disclose material facts to the same extent that a person may be liable for damages caused by fraudulent or negligent misrepresentation." *Peck,* 108 N.M. at 88, 766 P.2d at 932.

{61} Section 551 of the Restatement also explains when a party to a business transaction is under a duty to disclose material information prior to the consummation of the transaction. In particular, Section 551(2)(e) provides that a party:

> is under a duty to exercise reasonable care to disclose to the other ... facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

*Cf. Peck,* 108 N.M. at 88, 766 P.2d at 932 (citing with approval Section 551 and discussing the relationships and the special circumstances giving rise to a duty to disclose); *see also State Farm Fire & Cas. Co. v. Owen,* 729 So.2d 834, 842–43 (Ala.1998); *OMI Holdings, Inc. v. Howell,* 260 Kan. 305, 918 P.2d 1274, 1300–01 (1996); Restatement (Second) of Torts § 551 cmt. m. These authorities establish that courts typically consider a number of factors, including the relationship between the parties, the relative knowledge of the parties, the reasonable expectations of the plaintiff, the practices or customs of the trade, and other relevant circumstances, in determining whether there is a duty to disclose material facts.

{62} In its amicus brief, ACLI appears to acknowledge that Prudential may have had a duty to disclose basic facts concerning the transaction under Section 551(2)(e), but argues that all facts basic to the transaction were disclosed by Prudential. We conclude that based on *Modisette,* Section 551(2), and related fraud and misrepresentation case law, Prudential may have had a duty to disclose additional information to Plaintiffs concerning its modal premium practices both before and after the formation of the insurance contracts. However, as further discussed below, we conclude that reasonable minds could differ as to the materiality of the alleged undisclosed facts and that additional relevant facts must be developed in order for the trial court to properly determine whether a duty to disclose arose in this case.

{63} Finally, because we determine that the recognition of a common law duty in this case does not change existing law but is rooted in well established legal principles, we find no problem with retroactive application and thus reject Prudential's argument otherwise. *See generally Beavers v. Johnson Controls World Servs., Inc.,* 118 N.M. 391, 398, 881 P.2d 1376, 1383 (1994).

### (c) Statutory Duty to Disclose: UPA and UIPA

{64} Prudential further argues that no duty to disclose exists under either the UPA or the UIPA. We disagree, and conclude that Prudential may have a duty to disclose under both statutes, depending on the materiality of the facts.

{65} Both trade practices statutes specifically prohibit the making of any untrue, misleading, or deceptive statements in connection with the sale of any product. *See* §§ 57–12–2(D); 59A–16–4; 59A–16–5. Under the UIPA, this includes the "fail[ure] to disclose material facts reasonably necessary to prevent other statements made from being misleading." Section 59A–16–4(G). Under the UPA, this includes "using exaggeration, innuendo or ambiguity as to a material fact or failing to state a material fact if doing so deceives or tends to deceive." Section 57–12–2(D)(14); *see also Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.,* 170 F.3d 985, 994 (10th Cir.1999) (upholding UPA and UIPA claims in retrospective premium case

alleging failure to disclose method of whether to add surcharge or raise annual rates). Thus, we conclude that Prudential had a potential duty to disclose the allegedly material information to Plaintiffs based on the provisions of both the UPA and UIPA.

{66} Prudential, however, argues that a duty to disclose under the UPA is precluded by Section 57–12–7, which provides:

> Nothing in the [UPA] shall apply to actions or transactions expressly permitted under laws administered by a regulatory body of New Mexico or the United States, but all actions or transactions forbidden by the regulatory body, and about which the regulatory body remains silent, are subject to the [UPA].

In particular, Prudential contends that the regulatory defense of Section 57–12–7 applies because (1) the Federal Reserve Board, pursuant to TILA, determined that consumers were not misled when paying modal premium charges without first receiving information about "finance charges" and "APR" rates, *see* 12 C.F.R. § 226.2(a)(14)(1) (Supp.I); and (2) the Insurance Division expressly permitted the sale of Prudential's policies by approving the policies, including the change of frequency clause, without requiring additional "finance charge" or "APR" disclosures.

{67} We reject Prudential's first argument for the same reasons that we rejected its preemption argument. Because TILA does not apply to non-credit transactions, the Federal Reserve Board's regulations and interpretations do not control installment insurance premium plans like the ones in this case.

{68} We also reject Prudential's second argument. Although it is true that the Insurance Division does administer the regulatory laws governing the issuance of insurance policies in New Mexico, *see State ex rel. Stratton v. Gurley Motor Co.*, 105 N.M. 803, 807, 737 P.2d 1180, 1184 (Ct.App.1987), the Insurance Division has never specifically addressed the subject of modal premiums, and both the Insurance Code and the regulations are silent on the subject. Thus, it does not appear that the challenged activity—Prudential's non-disclosure of certain information regarding its modal premium practices—is "expressly permitted" by the Insurance Division. Accordingly, the regulatory defense set forth in Section 57–12–7 that would exclude transactions expressly permitted under New Mexico regulatory law does not apply. *See Campos v. Brooksbank*, 120 F.Supp.2d 1271, 1275 n. 3, 1277–78 (D.N.M.2000) (explaining that the phrase, "actions or transactions expressly permitted," is to be given narrow reading and that "the specific activity," including the manner in which it was done, must be expressly permitted to fall within exemption); *cf. Shields v. Lefta, Inc.*, 888 F.Supp. 894, 897 (N.D.Ill.1995) (concluding that defendant's use of model disclosure forms published by Federal Reserve did not insulate defendant from UPA claim just because alleged misrepresentations occurred within an otherwise sanctioned activity).

{69} To negate both a statutory and common law duty to disclose, Prudential also relies heavily on the Insurance Division's prior approval of its form of life insurance policy. *See* NMSA 1978, § 59A–18–14 (1987); *Montoya*, 1996–NMCA–067, ¶ 22, 122 N.M. 2, 919 P.2d 410 ("An agency's interpretation of its own statute is given deference."). However, as Plaintiffs point out, the approval of a policy by a regulatory body does not conclusively establish the validity of the policy or shield it from review by the courts. *See Johnson v. Lincoln Nat'l Life Ins. Co.*, 69 Ohio App.3d 249, 590 N.E.2d 761, 764 (1990) (explaining that approval of policy provision by insurance commissioner does not per se establish validity of provision, even though regulatory approval is prerequisite to use under insurance statute) (citing *Brader v. Nationwide Mut. Ins. Co.*, 270 Pa.Super. 258, 411 A.2d 516, 517 (1979)); *cf. Shovelin v. Cent. N.M. Elec. Coop., Inc.*, 115 N.M. 293, 298, 850 P.2d 996, 1001 (1993) (acknowledging that administrative determination may be given preclusive effect only if it was adjudicative in nature, and parties had opportunity to fully and fairly litigate issue at administrative hearing). Thus, although the Insurance Division's determination with respect to Prudential's form of policy is entitled to deference, it is not binding on the courts, particularly where the laws being applied by

the regulator are silent on the subject of the modal premium charges at issue. When the statute and regulations do not directly address an issue, courts are permitted to make an independent determination of the issue unconstrained by the prior administrative approval of the policy.

{70} Prudential further argues that the duty to make APR disclosures is belied by the legislature's repeal of Section 56–8–11.2(A), which until 1991 required the disclosure of finance charges and interest rates received by any person "charging any interest, discount or other advantage for the loan of money or credit or for the forbearance or postponement of the right to receive money or credit." However, once again, this argument is unsuccessful for the same reason we rejected Prudential's TILA arguments. Subsection B of the repealed statute makes it clear that the statute would have been inapplicable. *See* § 56–8–11.2(B) (providing that disclosure provisions "shall not be required of any person, corporation or association who is not regularly engaged or holding himself out as being in the business of *lending or extending credit*" (emphasis added)). Because the transactions in this case did not involve the extension of any credit by Prudential, the statute would not have applied. Accordingly, repeal of the statute does not assist Prudential in any way.

### (d) Materiality

{71} Although we hold that there is a potential duty to disclose material facts under both New Mexico common law and the UPA and the UIPA, summary judgment is not appropriate if the underlying facts giving rise to the duty are in dispute. *See Peck,* 108 N.M. at 88, 766 P.2d at 932. "If there are disputed facts bearing upon the existence of the duty, as for example the defendant's knowledge of the fact, the other's ignorance of it or his opportunity to ascertain it, the customs of the particular trade, or the defendant's knowledge that the plaintiff reasonably expects him to make the disclosure, they are to be determined by the jury under appropriate instructions as to the existence of the duty." Restatement (Second) of Torts § 551 cmt. m. We conclude that there are genuine issues of fact concerning the materiality of the undisclosed information in this case that preclude granting summary judgment in favor of Plaintiffs.

{72} The Restatement explains that a fact is material if "a reasonable man would attach importance to its existence or nonexistence in determining his choice of action" or "the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important." Restatement (Second) of Torts § 538(2)(a)(b). In *Modisette,* 77 N.M. at 667–68, 427 P.2d at 26, the Court stated that the representation or omission of "a fact is material if it operates as an inducement to the insurer to enter into the contract, where, except for such inducement, it would not have done so, or would have charged a higher premium." *See also Tsosie v. Found. Reserve Ins. Co.,* 77 N.M. 671, 674, 427 P.2d 29, 30–31 (1967) (indicating that a fact is material if it induces insurer to accept risk or fix rate of premium).

{73} Adapting the above definitions of materiality to the circumstances of this case, we conclude that the omissions by Prudential were material if they would have induced a reasonable consumer in Plaintiffs' shoes to enter into the insurance contracts or to select a particular payment mode. In addition, the question of materiality depends upon whether Prudential knew that Plaintiffs reasonably expected disclosure of the various payment modes and whether Plaintiffs had no reasonable opportunity to ascertain the significance of those payment modes. *See* Restatement (Second) of Torts § 551 cmt. m. "Ordinarily, the question of materiality is one of fact." *Modisette,* 77 N.M. at 668, 427 P.2d at 26; *accord Ledbetter v. Webb,* 103 N.M. 597, 600, 711 P.2d 874, 877 (1985). The party challenging a policy on the ground of concealment of material information has the burden of proof on the issue of materiality. *Tsosie,* 77 N.M. at 675, 427 P.2d at 31.

### (i) Summary Judgment Evidence

{74} In both his response to Prudential's motion for summary judgment and his own cross-motions for summary judgment, Plaintiff Azar relied on the policies and related documents, as well as the affidavits of two

business experts, Professor Belth and Dr. McDonald, to demonstrate the materiality of both dollar amount and APR information to consumers purchasing life insurance.

{75} Professor Belth, in his affidavit, explained why modal premium charges should be disclosed to both the policyholder and the prospective policyholder in terms of both dollars and an APR, similar to the disclosures required under TILA in consumer credit transactions. He stated that, in his opinion, "these are the essential material pieces of information the policyholder must have in order to make an informed decision about the premium payment frequency option that is most appropriate or advantageous in the light of his or her financial circumstances." He pointed out that modal premium charges affect a large majority of policyholders who pay their premiums more often than annually. He stated that modal premium charges should be disclosed, not only in dollars, but as an APR so that the consumer can make an informed choice about how best to pay for the annual premium, whether from a savings account or other investment, or by taking out a loan or charging to a credit card with a lower APR. He also stated that APR disclosures would allow the consumer to more easily compare the difference in charges among the various insurance companies. Finally, he explained that the failure to disclose an APR tends to deceive consumers by leaving the impression that the APR is lower than it actually is. He admitted, however, that it was his understanding that TILA does not apply to insurance companies.

{76} In his affidavit, Dr. McDonald indicated that he reviewed each of the policies in this case and calculated both the dollar amount differences and the APR for each of the policies. He reiterated many of the same points as Professor Belth with regard to the value of APR information to the average consumer who is purchasing life insurance. Finally, he opined that it is "extremely difficult to calculate, or even approximate, the applicable APR" for the various payment options, noting that "it is necessary to have a calculator or spreadsheet computer program which is specially programmed for the purpose of calculating APRs," and even then the

person must know how to operate the calculator or computer.

{77} Prudential submitted documentary evidence of its own in response to the affidavits submitted by Azar. In particular, Prudential submitted (1) the affidavit of Richard F. Lambert, vice president of the individual life products department, design and pricing division at Prudential; (2) the affidavit of Robert M. Willis, the former insurance commissioner of the District of Columbia and a former member of the National Association of Insurance Commissioners (NAIC); and (3) the deposition testimony of Michael Batte, the chief actuary of the Insurance Division.

{78} Lambert explained that Prudential's policies fully complied with the disclosure requirements set forth in the Insurance Code and the regulations. He stated that although he was aware of Belth's advocacy of the disclosure of APR information in insurance transactions, he did not believe insurance companies were required to make such disclosures because no state regulator has ever required such disclosures, and the Federal Reserve Board has expressly determined that modal insurance premium plans do not involve the extension of credit and therefore do not require APR disclosures. Lambert also disputed Azar's contention in his cross-motion for summary judgment that he was "required" to elect one of the several payment modes at the application stage, pointing out that Azar was not bound by his selection on the application and could cancel the insurance contract within ten days of receipt of the contract. He further disputed the contention that Prudential failed to disclose the dollar difference between paying premiums annually and on some other basis, referring to information disclosed in the policy summary and the policy itself, including the change of frequency clause.

{79} Finally, Lambert disputed the materiality of APR or interest rate information to the average consumer, claiming that no "interest" is paid by the policyholder when paying premiums more often than annually. He explained that the higher costs associated with making periodic rather than annual payments reflect several factors: (1) the increased administrative costs to the insurer of

processing multiple payments, (2) the higher lapse rate, and (3) the fact that the insurer loses investment income it otherwise would have earned with the annual premium. He further pointed out that he was unaware of any policyholder complaint about Prudential's modal premium practices, and that if any complaints had been made to state insurance regulatory agencies, they would have been forwarded to Prudential.

{80} In their testimony, Willis and Batte reinforced many of the same points made by Lambert. In particular, Willis emphasized that it would actually be misleading to policyholders to declare that additional payments equal an annual interest rate because it would convey to the policyholder that a loan or credit was being extended when that is not the case with installment premium plans. In addition, he stated that fifty state legislatures have established statutory in-policy disclosure requirements that do not call for APR disclosures, and that fifty state insurance regulators follow the practice of approving life insurance policy forms without APR disclosures. Batte, in his deposition, testified that he was unaware of any insurance regulatory body requiring dollar difference and APR disclosures in their insurance policies.

### (ii) Rule 1–056(F) and Whether Disputed Issues of Fact Exist

{81} We conclude that the evidence in the record gives rise to issues of fact concerning the materiality of any undisclosed APR and dollar amount information. With respect to the common law duty of disclosure, we believe that reasonable minds could differ as to whether a reasonable consumer in Plaintiffs' shoes would find dollar amount and APR information significant in deciding how to act and whether Prudential knew or should have known that consumers would view such facts as important. *See* Restatement (Second) of Torts § 538; *Twin Forks Ranch, Inc. v. Brooks,* 120 N.M. 832, 836, 907 P.2d 1013, 1017 (Ct.App.1995) ("Where reasonable minds could differ, the trial court erred in granting summary judgment"). Although Plaintiffs offered some evidence of materiality, Prudential presented conflicting evidence to rebut this evidence in support of its own

motion and in response to Azar's, thus creating issues of material fact concerning the parties' relative knowledge, Plaintiffs' reasonable expectations and opportunity to ascertain the undisclosed facts, and the value or appropriateness of providing APR information to consumers who may not technically be paying "interest" when paying for coverage in installments and who had never previously complained. *See* Restatement (Second) of Torts § 551 cmt. m. In addition, with respect to the UPA and the UIPA, this same evidence gives rise to conflicting inferences regarding whether Prudential "knowingly made" "false or misleading" statements, Section 57–12–2(D), or "fail[ed] to disclose material facts." Section 59A–16–4(G). Thus, although we conclude that the trial court properly denied Prudential's motion for summary judgment, we determine there are genuine issues of fact underlying any duty that preclude granting judgment to Plaintiffs as a matter of law on all their claims.

{82} We also conclude that the trial court erred in denying Prudential's request for relief under Rule 1–056(F), and as a result, on remand the parties may well develop additional evidence bearing on the materiality or non-materiality of the various payment options available to potential insureds. In opposing Azar's cross-motion for summary judgment, defense counsel filed an affidavit pursuant to Rule 1–056(F), maintaining that no showing had been made as to materiality, but requesting the opportunity to develop additional facts in the event the trial court were inclined to rule in Azar's favor on the issue. Specifically, the Rule 1–056(F) application sought to (1) depose Plaintiffs regarding what they knew, considered, or inquired about when they applied for insurance and selected their mode of payment, what they would have done differently if they had known the information at issue, and whether they ever complained or sought assistance from the Insurance Division with regard to the matters alleged in the amended complaint; and (2) cross-examine Plaintiffs' expert witnesses on the basis of their assertions.

{83} Plaintiffs claim that Prudential waived its Rule 1–056(F) application by failing to specifically request a discovery continuance or raise the Rule 1–056(F) affidavit at the summary judgment hearings. However, we determine the issue was sufficiently preserved because Prudential resubmitted the Rule 1–056(F) affidavit along with its brief in opposition to Azar's cross-motion. *See State v. Leyba,* 1997–NMCA–023, ¶ 7, 123 N.M. 159, 935 P.2d 1171(holding that a timely and specific argument made in written opposition to a motion was sufficient to preserve claimed error); *cf. Diversified Dev. & Inv., Inc. v. Heil,* 119 N.M. 290, 295, 889 P.2d 1212, 1217 (1995). Moreover, it appears that both parties agreed to postpone further discovery until the trial court ruled on Prudential's dispositive motions. Under these circumstances, we conclude that the trial court erred in refusing to consider Prudential's requested relief under Rule 1–056(F). *See Patty Precision v. Brown & Sharpe Mfg. Co.,* 742 F.2d 1260, 1264 (10th Cir.1984) ("An affidavit under Rule 56(f) should be treated liberally unless dilatory or lacking in merit."). Here, it does not appear that the facts have been sufficiently developed regarding what Plaintiffs knew and reasonably expected. *Cf. Delgado v. Costello,* 91 N.M. 732, 735, 580 P.2d 500, 503 (Ct.App.1978) ("Without factual information, the trial court could not determine whether there was a duty to disclose.").

{84} Thus, not only does the record contain disputed issues of fact concerning materiality, but additional underlying facts must be further developed by the parties before the trial court can properly determine whether there was a duty to disclose in this case. Generally, "a court should not grant summary judgment before a party has completed discovery, particularly when further factual resolution is essential to determine the central legal issues involved or the facts before the court are insufficiently developed." *Sun Country Sav. Bank v. McDowell,* 108 N.M. 528, 534, 775 P.2d 730, 736 (1989) (citation omitted); *see also Baker v. Bhajan,* 117 N.M. 278, 283, 871 P.2d 374, 379 (1994) (same). We therefore reverse the grant of partial summary judgment against Prudential and remand for further proceedings on the issue of duty and materiality.

*See Hennig v. Ahearn,* 230 Wis.2d 149, 601 N.W.2d 14, 23 (Ct.App.1999) (pointing out that "the facts surrounding an act of nondisclosure must be fully determined before a court can properly conclude whether a duty of disclosure exists").

### (e) Separation of Powers

{85} In its reply brief, Prudential argues that the trial court violated the separation of powers doctrine by recognizing a duty of disclosure because both the legislature and the executive branch, through the Insurance Division, have already spoken on the subject of premium disclosures, and neither specifically requires the disclosure of modal premium charges to the insured or the potential insured. *See generally State ex rel. Taylor v. Johnson,* 1998–NMSC–015, ¶¶ 20–21, 125 N.M. 343, 961 P.2d 768; *Torres v. State,* 119 N.M. 609, 612, 894 P.2d 386, 389 (1995) (stating that the courts, because they are not as directly and politically responsible to the people as the other branches, "should make policy in order to determine duty only when the body politic has not spoken"). Prudential has not indicated how its separation of powers argument was preserved. *See* Rule 12–216(A). Moreover, an appellate court "will not consider arguments raised for the first time in a reply brief." *State v. Castillo-Sanchez,* 1999–NMCA–085, ¶ 20, 127 N.M. 540, 984 P.2d 787. Nor will it reach constitutional questions unnecessarily. *In re Mary L.,* 108 N.M. 702, 705, 778 P.2d 449, 452 (Ct.App.1989). Therefore, we do not address the merits of Prudential's separation of powers argument.

### 2. Remaining Summary Judgment Claims

{86} The trial court granted partial summary judgment to Plaintiffs as to liability on all their New Mexico claims, except the Retail Installment Sales Act claim, even though only one Plaintiff, Azar, moved for summary judgment under the UPA. The court determined that it had authority to grant partial summary judgment to all Plaintiffs on all New Mexico claims because there was no genuine issue of material fact in the

record before it, and Prudential had moved for summary judgment on the entire amended complaint, thus putting into issue all of Plaintiffs' claims.

{87} Prudential argues that the trial court violated its due process rights by adjudicating all of Plaintiffs' claims against it and striking Prudential's affirmative defenses, including its statute of limitations defense, without giving Prudential notice and a reasonable opportunity to respond or present evidence to establish a genuine issue of material fact as to each of the claims adjudicated against it. We agree.

{88} Under Rule 1–056, the requirements of notice and opportunity to respond "are designed to protect the rights of the party opposing the motion." *Aldridge v. Mims*, 118 N.M. 661, 664, 884 P.2d 817, 820 (Ct.App. 1994). Moreover, as Prudential points out, Plaintiffs, to be entitled to partial summary judgment, had the burden of demonstrating that no genuine issue of material fact existed as to each element of their claims, and as to the affirmative defenses asserted by Prudential. *See Mayfield Smithson Enters. v. Com–Quip, Inc.*, 120 N.M. 9, 12, 896 P.2d 1156, 1159 (1995). Plaintiffs have not met this burden, and Prudential was not given an adequate opportunity to address all of the elements of Plaintiffs' claims where only one Plaintiff moved for partial summary judgment on only one of his claims. Although it is true that Prudential moved for summary judgment and sought dismissal of Plaintiffs' entire amended complaint, its motion addressed only the issue of duty. We conclude that, under these circumstances, the trial court erred in granting partial summary judgment for Plaintiffs on essentially all their claims.

### 3. Primary Jurisdiction

{89} Finally, Prudential argues that the trial court should have referred all factual issues to the Insurance Division under the doctrine of primary jurisdiction. Plaintiffs contend this Court should not consider the issue of primary jurisdiction on appeal because only one sentence of the brief-in-chief is devoted to the issue, and the issue is primarily argued in the amicus brief filed by

ACLI. *See State ex rel. Castillo Corp. v. N.M. State Tax Comm'n*, 79 N.M. 357, 362, 443 P.2d 850, 855 (1968) (declining to address issue argued in amicus curiae brief where it was not within the issues raised by the parties, explaining that amicus curiae "must accept the case on the issues as raised by the parties, and cannot assume the functions of a party").

{90} We proceed to address the issue because (1) there is no question that primary jurisdiction was raised and argued by the parties below; (2) Prudential appeals from an order denying its motion based on the primary jurisdiction doctrine; and (3) the issue is raised in Prudential's brief-in-chief, which asserts that "all the factual questions should have been referred to the Division of Insurance under the doctrine of primary jurisdiction," and cites to a leading New Mexico case on the issue. Thus, because the issue of primary jurisdiction is clearly within the issues raised by Prudential and is not simply being injected by amicus curiae for the first time on appeal, we consider the issue even though Plaintiffs are correct that most of the legal arguments directed at the issue are made in the brief of amicus curiae, and not the brief-in-chief.

{91} "The doctrine of primary jurisdiction arises when both a court and an administrative agency have concurrent jurisdiction." *Eldridge v. Circle K Corp.*, 1997–NMCA–022, ¶ 21, 123 N.M. 145, 934 P.2d 1074. The doctrine is usually raised when an action has been filed in the district court, and the opposing party claims that the more suitable forum for resolving issues is the administrative agency charged with regulating the subject matter of the dispute. *Id.* The referral of issues to an administrative agency under the doctrine does not divest the trial court of jurisdiction over the action, but only requires it to stay judicial proceedings pending resolution of the issues referred to the agency. *See State ex rel. Norvell v. Az. Pub. Serv. Co.*, 85 N.M. 165, 170, 510 P.2d 98, 103 (1973).

{92} The decision whether to invoke the doctrine is discretionary with the trial court. *Id.* at 171, 510 P.2d at 104.

Normally, the policies underlying the doctrine guide the trial court's exercise of discretion. *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956). These policies include (1) assuring uniformity and consistency in the regulation of business entrusted to the agency, and (2) enhancing court decision-making and efficiency by taking advantage of the knowledge, expertise, and experience of the agency. *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 303–04, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1976); *W. Pac. R.R. Co.*, 352 U.S. at 64, 77 S.Ct. 161. The main factor in determining whether to invoke the doctrine, however, is whether there "is the need for the particular expertise of the agency to resolve factual issues." *Eldridge*, 1997–NMCA–022, ¶ 22, 123 N.M. 145, 934 P.2d 1074. The expertise of the agency may not be needed, however, if the question to be resolved is " 'within the conventional competence of the courts.' " *Id.* (quoting *Nader*, 426 U.S. at 305–06, 96 S.Ct. 1978).

{93} In this case, the trial court and the Insurance Division appear to have concurrent jurisdiction over Plaintiffs' claims under the UIPA. The Insurance Code expressly grants the superintendent of insurance broad authority to enforce provisions of the Insurance Code. NMSA 1978, §§ 59A–2–1(B) (1998); 59A–2–8(C) (1984). The superintendent is specifically authorized to conduct "examinations and investigations" into "whether any person has violated any provision of the Insurance Code." Section 59A–2–8(E). The Insurance Code sets forth administrative procedures for investigating and remedying insurance practices that are unfair or deceptive to the public. *See* NMSA 1978, §§ 59A–18–12(C) (2002); 59A–16–28 (1984). Furthermore, the superintendent is charged with the responsibility of reviewing insurance policies before they are used in the state for any inconsistent, ambiguous, misleading or deceptive statements. Sections 59A–18–12(A); 59A–18–14; *see also* 13 NMAC 9.5.13 (2002); 13 NMAC 9.5.13.5.1 (2002); 13 NMAC 9.5.13.5.2; 13 NMAC 9.5.15.1 (2002); 13 NMAC 9.5.26 (2002).

{94} The power of the Insurance Division, however, does not appear to be exclusive.

The trial court also appears to have jurisdiction over the UIPA claims. *See* § 59A–16–30 (providing that any person who has suffered damages as a result of an insurer's unfair or deceptive act or practice "is granted a right to bring an action in district court to recover actual damages"); *see also Nader*, 426 U.S. at 303–04, 96 S.Ct. 1978 (explaining that even when common law rights and remedies survive, and the agency lacks power to determine common law liability, it may be appropriate to refer specific issues to an agency for initial determination where doing so would advance the policies behind the primary jurisdiction doctrine).

{95} In this case, the trial court denied Prudential's primary jurisdiction motion without explanation. Based on our review of the record, it is unclear whether the trial court, in denying the primary jurisdiction motion, exercised its discretion not to invoke the doctrine or simply decided that it did not have to reach the merits of the issue because it granted partial summary judgment in favor of Plaintiffs. Because the court concluded that there are no genuine issues of material fact as to Plaintiffs' claims, including the UIPA claim, it is quite possible the trial court merely determined that it did not have any remaining "factual issues" to refer to the Insurance Division. *See Eldridge*, 1997–NMCA–022, ¶ 22, 123 N.M. 145, 934 P.2d 1074.

{96} Because we conclude that the trial court erred in granting partial summary judgment in favor of Plaintiffs, and it is not clear what the rationale of the court was when it denied Prudential's primary jurisdiction motion, we remand the issue of primary jurisdiction to the trial court for reconsideration. *See Lucero v. Yellow Freight Sys., Inc.*, 112 N.M. 662, 667, 818 P.2d 863, 868 (Ct.App.1991) (explaining that when "the record on appeal generates doubt concerning the facts found or the law applied" by the trial court, it is appropriate for the appellate court to remand for reconsideration and allow the trial court to exercise its discretion); *accord Bryant v. Lear Siegler Mgmt. Servs. Corp.*, 115 N.M. 502, 511, 853 P.2d 753, 762 (Ct.App.1993); *see also State v. Ferguson*, 111 N.M. 191, 196–97, 803 P.2d 676, 681–82

(Ct.App.1990) (Hartz, J., dissenting) (explaining why it is significant for the trial court to articulate the basis of the exercise of its discretion and indicating preference for remand to enable the trial court to apply correct legal standard even though it may reach the same result).

## III. CONCLUSION

{97} Applying the general public interest exception to the preservation requirement, we reach the issue of preemption and hold that TILA does not preempt Plaintiffs' state law claims. Although we recognize that Prudential has a potential duty, under both statutory and common law, to disclose dollar amount and APR information to Plaintiffs, we conclude that genuine issues of fact remain as to the materiality of the undisclosed information and that the record must be further developed before the trial court can properly decide whether a duty to disclose exists as a matter of law. We determine that the trial court erred in granting partial summary judgment in favor of Plaintiffs on all their New Mexico claims without giving Prudential adequate notice and a reasonable opportunity to defend and present additional material evidence. Finally, because it is not clear on what basis the trial court denied Prudential's motion to refer claims to the primary jurisdiction of the Insurance Division, we remand the issue of primary jurisdiction to the trial court for reconsideration. Accordingly, we affirm the denial of Prudential's motion for summary judgment, reverse the grant of partial summary judgment in favor of Plaintiffs, reverse the denial of Prudential's primary jurisdiction motion, and remand for further proceedings consistent with this opinion.

{98} IT IS SO ORDERED.

WE CONCUR: CELIA FOY CASTILLO and RODERICK T. KENNEDY, Judges.